405 So.2d 1074 (1981)
In re the GUARDIANSHIP OF Lucile K. JANSEN.
No. 80-2314.
District Court of Appeal of Florida, Second District.
November 18, 1981.
*1075 Carleton L. Weidemeyer of Wightman, Weidemeyer & Maynor, H.H. Baskin, Jr., Clearwater, and Jack F. White, Jr., St. Petersburg, for appellant Lucile K. Jansen.
No appearance for appellees Sun First National Bank of Dunedin, Gregory D. Gracy, and Mary Lou Wagstaff.
BOARDMAN, Acting Chief Judge.
Lucile K. Jansen appeals orders requiring her to pay attorney's fees to the voluntary guardian of her property, Sun First National Bank of Dunedin (Sun Bank); Sun Bank's counsel, Gregory D. Gracy; and her guardian ad litem, Mary Lou Wagstaff. We affirm in part and reverse in part.
On February 6, 1979, Mrs. Jansen, then seventy-two years old, filed a petition for voluntary guardianship for reasons of physical infirmity only, requesting that Sun Bank be appointed guardian of her property. This petition was granted immediately in an order describing Mrs. Jansen as "a physically incapacitated person"; no adjudication of incompetence was made, however.
In October 1979,[1] Mrs. Jansen's sister filed a petition for determination of Mrs. Jansen's physical and mental competency. The ultimate outcome of this petition, following several examinations and re-examinations of Mrs. Jansen, was the entry on March 5, 1980, of an order finding her to be both mentally and physically competent and dismissing her sister's petition.
Meanwhile, on December 6, 1979, Sun Bank filed a petition for appointment of a guardian ad litem to represent Mrs. Jansen in a federal court proceeding she had instituted against it. At a hearing held on February 7, 1980, the trial court agreed that due to the conflict between Jansen and Sun Bank, the guardian of her property, posed by the federal suit, a guardian ad litem should be appointed. Three people were recommended by the several counsel present, and Wagstaff was ultimately agreed upon.[2] Counsel for Mrs. Jansen, who were present at this hearing, made no objection to the appointment of a guardian ad litem and expressly stated that Wagstaff was acceptable to them as guardian ad litem.
Accordingly, on February 25, 1980, an order was entered which, inter alia, appointed Wagstaff "to act as guardian ad litem to represent the financial interests of Lucile K. Jansen in that litigation," "that litigation" being identified in the order as "that certain action styled Lucile K. Jansen v. Honorable Charles W. Burke, Circuit Judge, et al., in the United States District Court for the Middle District of Florida, Tampa Division, numbered 79-119-Civ.T.H." The oath to faithfully perform her duties as guardian ad litem, taken by Wagstaff on March 12, 1980, also expressly delineates the specific parameters of her appointment.
On March 26, 1980, Sun Bank filed its resignation as guardian of Mrs. Jansen's property and petition for discharge. On the same date, Mrs. Jansen filed a petition to terminate her voluntary guardianship, relying on the March 5, 1980, order finding her *1076 competent and alleging that there had never been any need for this guardianship and that she had been improperly influenced to request the guardianship by Sun Bank and her previous attorney.
Inasmuch as Mrs. Jansen had been formally declared to be neither mentally nor physically incompetent not even three weeks prior to the filing of these two petitions, Mrs. Jansen's voluntary guardianship should have been immediately terminated, thereby sparing her the financial and emotional strain of unnecessary and protracted litigation. However, it was not. Instead, at a hearing on April 9, 1980, called to dispose of the petitions for termination of Sun Bank's guardianship and other matters relating to payment by Sun Bank of certain bills incurred by Mrs. Jansen, Wagstaff appeared and injected herself into the proceedings over the objection of Mrs. Jansen's attorney. In addition, she requested clarification from the court concerning her duties as guardian ad litem. In response, notwithstanding its findings of March 5, 1980, the court (Judge William L. Walker) expressed concern as to whether Mrs. Jansen was in fact physically disabled and said that was one thing Wagstaff should look into.
Over the repeated objection of Mrs. Jansen's attorney that such an inquiry on Wagstaff's part was beyond the scope of her authority as guardian ad litem and was unnecessarily running up expenses that Mrs. Jansen could ill afford to pay out of her meager assets, which had dwindled to less than $14,000, Wagstaff vigorously pursued her inquiry. She sought discovery of medical records, to which Mrs. Jansen's attorneys objected on grounds of her right to privacy and confidentiality, and physical examinations to which Mrs. Jansen also objected. Six more months of extensive (and expensive) litigation ensued.
Hearing on the petitions for termination of the voluntary guardianship was finally held by a different judge on October 1, 1980. At that hearing, Wagstaff recommended against termination. Her sole basis for this recommendation was the fact that Mrs. Jansen has epilepsy and would not be able to care for herself if she had a grand mal seizure, which she has had in the past.[3] Notwithstanding Wagstaff's recommendation, the voluntary guardianship was terminated in an order entered October 17, 1980, the court retaining jurisdiction to award fees to Sun Bank, Sun Bank's attorney, and/or Wagstaff.
Fees were, of course, sought by all concerned. Mrs. Jansen objected to an award of fees to Wagstaff for any activities other than those related to the federal litigation, which appear to account for no more than ten per cent of the total time expended by Wagstaff. However, the trial court refused to so limit Wagstaff's fee entitlement.
Nevertheless, the trial court did take Mrs. Jansen's limited assets into account in awarding fees, awarding to all petitioners far less than the court considered the value of their services to be. In separate orders, the court awarded Sun Bank, Gracy, and Wagstaff each $1500. Mrs. Jansen appeals all three of these fee awards.
Mrs. Jansen first contends that the trial court did not have jurisdiction to award any fees because the March 5, 1980, order declaring her competent was a final order, and it did not reserve jurisdiction to award any fees. This description of the March 5, 1980, order is accurate, but that order was dispositive only of Mrs. Jansen's sister's petition to have her declared incompetent; it in no way pertained to termination of Mrs. Jansen's voluntary guardianship, which had not yet been requested. The October 17, 1980, order, which did terminate the voluntary guardianship, did reserve jurisdiction to award fees, and we see no basis for reversal of the orders awarding fees to Sun Bank and Gracy.
*1077 Wagstaff's fee award, however, is another matter. Wagstaff was clearly and expressly authorized to represent Mrs. Jansen's financial interests in the federal litigation; i.e., the scope of her authority was expressly limited. This was properly done in accordance with Section 744.391, Florida Statutes (1979), which provides in pertinent part: "If an action is brought by the guardian against the ward, or vice versa, or if the interest of the guardian is adverse to that of his ward, a guardian ad litem shall be appointed to represent the ward in that particular litigation." (Emphasis added.) The appointment was also in accordance with section 744.102(2), which defines "guardian ad litem" as follows: "A `guardian ad litem' is one appointed by a court in which particular litigation is pending to represent a ward in that litigation." (Emphasis added.)
We agree that the statutes give little guidance as to precisely what duties a guardian ad litem has. Nevertheless, we think the statutes and the order appointing Wagstaff guardian ad litem clearly limit her duties and authority; and we believe it is equally clear that Wagstaff's investigation of Mrs. Jansen's physical competency for purposes of advising the state court as to the advisability of terminating a voluntary guardianship, termination of which was sought by both ward (who was represented by able counsel of her own choosing) and guardian, when the ward had not only never been adjudicated incompetent but had very recently been adjudged competent, was beyond the scope of her authority.
A guardian's fee must be reasonable, § 744.108, and legal services, in order to be compensated for, must have been rendered "to the ward, or to the guardian in the ward's behalf." § 744.424; Lucom v. Atlantic National Bank, 97 So.2d 478 (Fla. 1957). We fail to see how Wagstaff's activities in the state court concerning this case can by any stretch of the imagination be considered to have benefitted Mrs. Jansen. Indeed, they have clearly economically injured her by further dissipating her estate to pay additional fees to Sun Bank for administration of her estate while termination of its guardianship was unjustifiably delayed and to Gracy for his attendance at several hearings during the period of delay which should not have been necessary. Moreover, these activities cannot be said to have been done on Mrs. Jansen's behalf where Mrs. Jansen, who was legally competent to handle her own affairs, and her personally chosen counsel strenuously opposed Wagstaff's efforts every step of the way. Compensation to a guardian who has seriously breached his or her duty is not justified. American Surety Co. v. Hayden, 112 Fla. 17, 150 So. 114 (1933); see Poling v. City Bank & Trust Co., 167 So.2d 52 (Fla.2d DCA 1964).
Accordingly, we hold that appellee Wagstaff is not entitled to a fee for any of her activities in connection with her investigation of Mrs. Jansen's physical condition. She is entitled to a fee only for her activities in connection with the federal suit involving Mrs. Jansen and Sun Bank, since those were the only activities within the scope of her appointment as guardian ad litem to Mrs. Jansen.
Accordingly, the orders awarding fees to Sun Bank and Gracy are affirmed, but the portion of the order of November 21, 1980, awarding Wagstaff a fee for her services as guardian ad litem is reversed and the cause remanded for further adversary hearing for determination of the nature and extent of Wagstaff's services in connection with the federal litigation and award of an appropriate fee for those services.
AFFIRMED in part, REVERSED in part, and REMANDED.
OTT, J., concurs.
GRIMES, J., concurs specially.
GRIMES, Judge, concurring specially.
I concur in all aspects of the opinion except for any implication that Ms. Wagstaff may have breached her fiduciary obligations.
I regret that we do not have the benefit of a brief on behalf of Ms. Wagstaff which *1078 might explain why she believed that contesting the termination of the voluntary guardianship was within the scope of her duties as guardian ad litem. I am satisfied that she was not trying to run up her fee because it was evident that Mrs. Jansen's assets were never going to be enough to justify an award commensurate with the reasonable value of her services.
NOTES
[1] From October 1979 on Mrs. Jansen has employed attorneys H.H. Baskin, Jr., and Jack F. White, Jr., as her legal counsel.
[2] Wagstaff knew nothing of any of this until she was formally appointed guardian ad litem. She neither volunteered for nor solicited this appointment.
[3] Wagstaff seems to have overlooked the fact that Mrs. Jansen's epilepsy has been controlled with appropriate medication for over thirty years. Only when a physician without knowledge of her epileptic condition took her off this medication did she suffer the recent seizures which gave rise to Wagstaff's concern.