443 S.E.2d 262

Robert Reed SOWA, heretofore, and in his individual capacity and his capacity heretofore appointed as Guardian Ad Li-tem, Plaintiff Below, Appellant,

v.

Roy C. HUFFMAN, Stanley Adkins, and Randy Harris, Committee for Nolan B. Hamric, an Incompetent, and County Commission of Braxton County, Defen-dants Below, Appellees,

John Hamric and Leah Hamric, Intervenors, Appellees.

No. 21569.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided April 4, 1994.

Robert Reed Sowa, pro se.

James Wilson Douglas, Sutton, Atty. for appellees, Roy C. Huffman, Stanley Adkins and Randy Harris.

William C. Martin, Pros. Atty., Sutton, for appellee, County Com'n of Braxton County.

Donald A. Lambert, Charleston, Atty. for intervenors, John Hamric and Leah Hamric.

McHUGH, Justice:

The appellant, Robert Reed Sowa, *pro se*, in his individual capacity and in his capacity as court-appointed guardian ad litem, appeals from the October 15, 1992, order of the Circuit Court of Braxton County which dismissed his complaint.[1] The appellant filed

---

1. The appellant filed a motion for reconsideration of the dismissal of his complaint with the trial court. The trial court denied his motion. However, Justice Miller wrote the following about motions for reconsideration in n. 1 of *Nine v. Grant Town*, 190 W.Va. 86, ——, 437 S.E.2d 250, 251 (1993):

We note that 'no provision in the [West Virginia Rules of Civil Procedure] ... allows a motion for reconsideration to be filed.' *Rowan v. McKnight*, 184 W.Va. 763, 764 n. 2, 403 S.E.2d 780, 781 n. 2 (1991). However, a motion for relief from judgment or order may be filed pursuant to Rule 60 of the West Virginia Rules of Civil Procedure, and a motion for a

his complaint in the circuit court seeking to recover attorney fees and expenses incurred for his work as guardian ad litem which was performed after the competency of his client was determined and after the Committee was appointed. The appellees are Roy C. Huffman, Stanley Adkins, and Randy Harris, Committee for Nolan B. Hamric, an incompetent, and the County Commission of Braxton County. John Hamric and Leah Hamric intervened as appellees. For reasons stated below, we affirm the October 15, 1992, order of the circuit court.

## I

On May 7, 1991, a petition was filed seeking an adjudication that Nolan B. Hamric was incompetent and seeking the appointment of a Committee for him. The appellant was appointed as guardian ad litem for Nolan Hamric.

Nolan Hamric was eighty-seven years old at the time the petition was filed, and his estate exceeded five million dollars. His son, John, received social security disability checks and has been financially dependent upon his father for most of his life. Nolan Hamric has an elderly sister, Leah Hamric, who has also been financially dependent upon him for the last ten years. Nolan Hamric also provided a monthly stipend to his granddaughter, Robin Hamric Arnold.

On June 7, 1991, an order was entered which adjudicated Nolan Hamric as incompetent upon finding that he was unable to manage his business affairs, and unable to care for his physical well being. Roy Huffman, Stanley S. Adkins, and Randy Harris were appointed as the Committee for Nolan Hamric. Roy Huffman resigned, and on January 8, 1993, Tom Hefner was appointed in his stead.

Neither Nolan Hamric nor the appellant appealed the finding of incompetency to the circuit court. However, subsequent to the appointment of the Committee, a dispute arose between John and Leah Hamric and the Committee regarding the manner in which the Committee would make payments

in their behalf. Evidently, the counsel for John and Leah Hamric requested the appellant as guardian ad litem to intervene. The appellant claims the legal fees which are the subject of this appeal were incurred from this time forward.

Shortly thereafter, the appellant became aware that the Committee had assumed the payment of the first lien trust deed of a bowling alley, known as Mid–Mountain Entertainment, Inc., for $581,772.28. According to the appellant's brief, the Committee contended that this was necessary to preserve the priority of Nolan Hamric's second deed of trust with Mid–Mountain Entertainment, Inc. payable to Nolan Hamric in the sum of $700,000 bearing 10% interest.

The appellant questioned the legality of the Committee's assumption of the first lien trust deed without prior court approval based on *Williams v. Skeen,* 184 W.Va. 509, 514, 401 S.E.2d 442, 447 (1991), which stated that court approval is needed for "those transactions [performed by a committee] which require or suggest approval by statute such as a real estate sale...." The appellant has since discovered that Mid–Mountain Entertainment, Inc. has filed for bankruptcy. According to the appellant, Mid–Mountain Entertainment has made no payments to Nolan Hamric.

Although not clear in the record before us, the appellant states that the Committee filed an action in December of 1991 naming the appellant as guardian ad litem. The record before us does not indicate the subject matter of the December, 1991 action nor does it indicate why the guardian ad litem was named in that action. However, at a January 2, 1992, hearing, the appellant as guardian ad litem was dismissed as a party from the action. At that time the appellant requested his attorney fees from the Committee. The Committee refused to pay the appellant. The appellant then made a motion before the County Commission to have his fees paid, but no action was taken.

The appellant filed a complaint, which is the subject of this appeal, on March 20, 1992,

new trial or an amendment of judgment may be filed pursuant to Rule 59. *See Lieving v.*

*Hadley,* 188 W.Va. 197, 201, 423 S.E.2d 600, 604 (1992).

requesting $3,361.40 in attorney fees and expenses incurred from September 17, 1991, until January 2, 1992, for his work as guardian ad litem. The circuit court found that the appellant was not entitled to the requested attorney fees because the guardian ad litem's role ended once the Committee was appointed on June 7, 1991. The appellant requests that this Court remand the case to the circuit court with directions to award the appellant $3,361.40 in attorney fees as well as the attorney fees for this appeal.

The appellant also filed a motion to disqualify the Committee's counsel, James Wilson Douglas, since Mr. Douglas had represented Nolan Hamric's granddaughter, Robin Hamric, in proceedings adverse to the Committee and Nolan Hamric's son and sister before becoming the Committee's counsel. Since Mr. Douglas informed the granddaughter of the change and since she consented in writing to his representation of the Committee, Mr. Douglas states that he should not be disqualified. For reasons stated below, we have chosen not to address this issue.

## II

The appellant seeks to recover attorney fees for his work as guardian ad litem which he performed after a Committee was appointed for his client, who was found incompetent, and after the appeal period had expired.[2] In order to address this issue it is necessary for us to discuss the role of the guardian ad litem during and after the competency proceedings set forth in *W.Va.Code,* 27–11–1, *et seq.*

The Committee contends that the following language from *W.Va.Code,* 27–11–1(b) [1990], in part, limits a guardian ad litem's duties to the proceedings which determine whether or not a person is incompetent:

[T]he county commission ... shall appoint a competent attorney practicing before the bar of the circuit court of the county wherein the hearing is to be held as guard-

ian ad litem for the purpose of representing the interest of the individual *throughout the proceedings under this section.* (emphasis added). Section one of article eleven, chapter twenty-seven of the *West Virginia Code* outlines the proceedings which determine whether someone is incompetent or not.

To bolster its argument the Committee quotes the following language found in *Black's Law Dictionary* 706 (6th ed. 1990): "A *guardian ad litem* is a special guardian appointed by the court in which a particular litigation is pending to represent an infant, ward or unborn person in that particular litigation, and *the status of guardian ad litem exists only in that specific litigation in which the appointment occurs.*" (emphasis added and citation omitted). The Committee does acknowledge that the guardian ad litem may appeal the finding of incompetency, but asserts that once the Committee is appointed the guardian ad litem's duties end. *See W.Va.Code,* 27–11–1(g) [1990].[3]

The appellant, on the other hand, points out that *W.Va.Code,* 27–11–1(h) [1990] states, in part, that "[t]he individual or any person may apply to the county commission ... for termination of his or her committee at any time[.]" The appellant argues that if the guardian ad litem's duties terminate with a finding of incompetency, then the provision allowing a person to terminate his or her Committee would often be meaningless.

Furthermore, the appellant points out that *W.Va.Code,* 27–11–1(f) [1990] states, in part, that "the committee [is entitled] to custody of the individual ... but only to the extent as is necessary for the protection of the individual[.]" The appellant questions who will challenge the Committee if it goes beyond what is necessary for the protection of the individual if a guardian ad litem's duties do not continue beyond the finding of incompetency.

■ We understand the appellant's contentions and appreciate the soundness of that

---

**2.** The appellant discusses several issues. However, we will group those issues into one main issue in this opinion for simplicity.

**3.** *W.Va.Code,* 27–11–1(g) [1990] states, in pertinent part: "An individual found incompetent pursuant to subsection (d) of this section shall have the right to an appeal and hearing thereon in the circuit court of the county[.]"

position. However, we have stated that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

*W.Va.Code*, 27–11–1(b) [1990], in part, clearly and unambiguously states that "the county commission ... shall appoint a ... guardian ad litem for the purpose of representing the interest of the individual throughout the proceedings under this section." The section referred to in *W.Va.Code*, 27–11–1(b) [1990] is the section which outlines the competency proceeding.

■ Additionally, even if *W.Va.Code*, 27–11–1(b) [1990] was ambiguous, this Court has stated "that generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for the general and proper use of such words." *Amick v. C & T Development Co., Inc.*, 187 W.Va. 115, 118, 416 S.E.2d 73, 76 (1992). As the Committee points out, the definition of guardian ad litem in *Black's Law Dictionary* limits the guardian ad litem's role to the specific litigation which led to the appointment. Accordingly, we hold that the duties of a guardian ad litem, who is appointed pursuant to *W.Va.Code*, 27–11–1(b) [1990] to represent an alleged incompetent in a competency proceeding, end when the Committee is appointed and the appeal period has expired.

However, we agree with the appellant's contentions that there needs to be some mechanism by which the Committee may be challenged. Especially since the Commission on National Probate Standards made the following observation:

> In 1987, after numerous stories of abuses, the Associated Press (AP) conducted a study of the nation's guardianship system, resulting in a report, 'Guardians of the Elderly: An Ailing System.' The report described a 'dangerously burdened and troubled system that regularly puts elderly lives in the hands of others with little or no evidence of necessity, and then fails to guard against abuse, theft, and neglect.' Specifically identified problems were lack of resources to adequately monitor the activities of guardians and the financial and personal status of their wards; guardians who have little or no training; lack of awareness of alternatives to guardianship; and the lack of due process.

Commission on National Probate Court Standards, *National Probate Court Standards* 1 (1993) (footnote omitted).

In recent years, the legal system has begun to focus its attention on the problems with the current guardianship scheme. *E.g.*, Sally Balch Hurme, American Bar Association, *Steps to Enhance Guardianship Monitoring* (1991); Commission on National Probate Court Standards, *supra;* Commission on the Mentally Disabled and Commission on Legal Problems of the Elderly, American Bar Association, *Guardianship An Agenda for Reform* (1989); Erica F. Wood, American Bar Association, *Statement of Recommended Judicial Practices* (1986); and Lawrence A. Frolik, *Plenary Guardianship: An Analysis, a Critique and a Proposal for Reform,* 23 Ariz.L.Rev. 599 (1981).[4] In spite of recent

---

4. For instance, in *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), this Court outlined the responsibilities of a guardian ad litem in child abuse and neglect cases. However, *In re Jeffrey R.L.* is not helpful to the issue before us since the guardian ad litem's role is tailored to the needs of children in abuse and neglect proceedings rather than to adults in competency proceedings.

Furthermore, *In re Jeffrey R.L.* is not helpful on the issue of when a guardian ad litem's role ends since this Court stated that the guardian ad litem's role ends once "the child is adopted, placed in a permanent home, or the case is dismissed after an improvement period." *Id.* at 42, 435 S.E.2d at 180. Logically, the guardian

ad litem's role should continue in a child abuse and neglect case until the child is adopted, placed in a permanent home or the case is dismissed after an improvement period since the purpose of the child abuse and neglect proceeding is to make sure the child is placed in a stable environment. Likewise, in a competency proceeding the guardian ad litem's role should continue until the ward is placed in a secure environment whether that be on his own if the ward is found competent or in the care of a guardian or Committee if he is found incompetent.

The appellant, in the case before us, wants to extend the role of the guardian ad litem until the ward dies or until the guardianship ends. Although we agree that there needs to be a way to

attention to the subject a trend regarding the responsibilities of guardian ad litems in cases involving adults who are allegedly incompetent has not emerged.

For instance, the American Bar Association recommends that the attorney for the ward (which would be the guardian ad litem in our state) continue to represent the ward throughout the guardianship.[5] Hurme, *supra* at 63. However, the American Bar Association noted that it was

> less likely that the ward's attorney will maintain an on-going relationship after the appointment of the guardian. In many jurisdictions, the court appointed attorney is dismissed after the hearing or after the time for filing an appeal has passed. If the ward needs counsel at a later date, courts frequently appoint the same attorney to serve again, but usually representation is episodic rather than continual.

*Id.* at 65.

For example, in Tennessee the guardian ad litem's role ends once an order has been entered which disposes of the petition which caused the appointment of the guardian ad litem. *Tenn.Code Ann.* § 34–11–107(g) (Supp.1993).[6] Likewise, in Florida the guardian ad litem's role ends once the particular proceeding for which the guardian ad litem was appointed to represent the ward ends. *Fla.Stat.Ann.* § 744.102(9) (Supp. West 1993).[7]

The American Bar Association also focuses on the court's duties to monitor the guardianship. Hurme, *supra.* The American Bar Association succinctly stated its view when it wrote the following:

> While the hands-off approach by courts in the administration of a decedent's estate may be salutary, a guardianship involving a living but incapacitated person requires on-going court involvement. Instead of the rather sterile business of an administrator wrapping up the financial affairs of a deceased person and distributing assets according to the decedent's wishes or intestacy rules, a guardian is responsible for the daily personal affairs of his ward. This responsibility, particularly for a young disabled adult, may last for decades. In addition to handling financial matters, a guardian may decide where the ward lives, the medical or mental treatment the ward receives, with whom the ward associates and the education or habilitation the ward receives. These far-reaching decision-making powers are far more complex socially and ethically than closing a decedent's estate. As the Maryland Court of Special Appeals has recognized, unlike 'an ordinary type of lawsuit in which the court's role is merely that of fact-finder and adjudicator ... [the court] has a much deeper involvement—a much more signifi-

---

monitor the guardianship, the extent of that role is difficult to define because the ward could live for decades.

5. Some commentators recommend that there be more than one person representing the ward. For instance, the guardian ad litem (or court visitor, or court investigator, or court evaluator depending on how different jurisdictions have designated this person) would represent the best interest of the ward. *E.g.*, Commission on National Probate Court Standards, *supra* standard 3.3.4 at 58–9. This person would not necessarily need to be an attorney. Additionally, an attorney would be appointed to advocate the wishes of the ward. *E.g.*, Commission on National Probate Court Standards, *supra* standard 3.3.5 at 59–60.

6. *Tenn.Code Ann.* § 34–11–107(g) (Supp.1993) states: "Unless the court orders otherwise, the guardian ad litem has no continuing duty once an order has been entered disposing of the petition which caused the guardian ad litem's appointment."

7. *Fla.Stat.Ann.* § 744.102(9) (Supp. West 1993) states: " 'Guardian ad litem' means a person who is appointed by the court having jurisdiction of the guardianship or a court in which a particular legal matter is pending to represent a ward in that proceeding."

In a case similar to the case before us, a guardian ad litem was appointed to represent a ward's financial interest in a certain federal litigation. *In re Guardianship of Jansen*, 405 So.2d 1074 (Fla.Dist.Ct.App.1981). The guardian ad litem incurred legal fees in a state proceeding, separate from the federal litigation, when investigating the ward's competency for purposes of advising the state court as to whether the guardianship should be terminated. The District Court of Appeal of Florida held that the attorney could not collect attorney fees for her investigations for the state court proceeding since her role as guardian ad litem was limited to the federal litigation. *Id.*

cant function—in a guardianship proceeding. "Lest sight be lost of the fact, we remind all concerned that a court of equity assumes jurisdiction in guardianship matters to protect those who, because of illness or other disability, are unable to care for themselves. In reality the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility." '

*Id.* at 7 (quote from *Law v. John Hanson Savings & Loan,* 42 Md.App. 505, 400 A.2d 1154, 1158 (1979) citing *Kicherer v. Kicherer,* 285 Md. 114, 400 A.2d 1097, 1100 (1979)). The American Bar Association goes on to outline the many ways the court can monitor the guardian. *Id.* Some of the recommendations include using volunteers to monitor the ward's personal condition; appointing someone to investigate complaints and verify the information in the reports, and sending status reports to interested persons so they may verify or object to the content. *Id.* (see pgs. 1–3 for a good overview).

The recommendations by the various commentators are very intricately detailed. In fact, too detailed to thoroughly discuss them in this opinion. However, when comparing the various recommendations with our statutes it is obvious that our guardianship statutes currently do not provide a sufficient monitoring system. The only accountability a Committee has is found in chapter 44, article 4 of the *West Virginia Code,* which concerns accountings by fiduciaries.

Under *W.Va.Code,* 44–4–2 [1993] the fiduciary has to make a yearly accounting to the fiduciary commissioner for any property or money which he has received, become chargeable with or disbursed. There is no other monitoring of the guardian beyond the accounting system set forth in chapter 44 of the *West Virginia Code.* Obviously, there is a need to more closely monitor the guardian. The yearly accountings will not necessarily alert the fiduciary commissioner to abuses by the guardian.

However, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded." *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). *See also* syl. pt. 1, *Consumer Advocate Division of the Public Service Commission v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989). Therefore, although we recognize that the current statutes may not adequately protect the incompetent, it is the legislature which must rectify the problem.

We should note, however, that in *McClure v. McClure,* 184 W.Va. 649, 654, 403 S.E.2d 197, 202 (1991), this Court held that when a personal representative has acted in violation of his or her fiduciary duties then he or she may be removed for cause by the circuit court. This Court recognized in *McClure* that when an administrator is appointed by the county commission such appointment cannot be collaterally attacked in the circuit court since the county commission has jurisdiction over probate matters. However, in *McClure* we recognized an exception when a personal representative has acted in violation of his or her fiduciary duties.

No provision of the *W.Va.Code* has been brought to our attention, nor have we found a provision which addresses whether a guardian ad litem is to be appointed in an action which alleges that the Committee has violated its fiduciary duties. However, common sense would compel one to conclude that an incompetent should have legal representation in this situation in order to protect his or her interest. The Supreme Court of Vermont has stated that a guardian ad litem must be appointed for an incompetent when fundamental rights are involved. *In re Guardianship of E.B.,* 152 Vt. 608, 568 A.2d 399, 400 (1989). We agree with the Supreme Court of Vermont, especially if the ward's interest is being adversely affected by the very person who is responsible for protecting him.

Therefore, any person may petition the circuit court to remove a personal repre-

sentative when there is evidence that the personal representative has acted in violation of his or her fiduciary duties. Additionally, although the *W.Va.Code* does not specifically authorize the reappointment of a guardian ad litem, a guardian ad litem should be appointed or reappointed when a Committee has been accused of violating its fiduciary duties in order to protect the incompetent. However, in order for the guardian ad litem to be able to collect attorney fees, the circuit court must first appoint or reappoint him or her to the case.[8]

In the case before us, the appellant filed his complaint requesting attorney fees for his work. Therefore, we are limited to addressing only this issue since this was the only issue before the circuit court when it entered the order which the appellant appeals to this Court. In the future, however, if the appellant suspects that the Committee has breached its fiduciary duties he may seek the removal of the Committee in the circuit court. If the circuit court finds merit to the appellant's allegations, then it can reappoint him or appoint another person as guardian ad litem. If the appellant were reappointed to the case then he could collect attorney fees.

■ In conclusion, although the appellant's actions are commendable, there is no statutory authority for him to continue his duties as guardian ad litem once the Committee is appointed and the appeal period has expired. Therefore, we are unable to award the appellant his requested attorney fees.

## III

■ The appellant made a motion before this Court asking that the Committee's current counsel, James Douglas, be disqualified since he represented Nolan Hamric's granddaughter in a proceeding against the Committee. The appellant notes that the same motion to disqualify Mr. Douglas as counsel is currently pending before the circuit court.[9] Therefore, we decline to address the issue since it is pending before the circuit court.

## IV

Accordingly, we affirm the order of the circuit court and decline to award the appellant attorney fees since his duties as guardian ad litem ended when the Committee was appointed and the appeal period expired.

Affirmed.

---

**8.** This approach may not have a significant impact since during the 1994 session the legislature amended the *West Virginia Code* to address some of these issues. On March 12, 1994, the legislature passed Enr.Com.Sub. for H.B. 4508, 2d Reg. Session, 71st Legislature (1994). The Enr. Com.Sub. for H.B. 4508 will be effective ninety days from passage. The legislature in Enr. Com.Sub. for H.B. 4508 repealed article eleven, chapter twenty-seven and article ten-a, chapter 44 of the *Code* and added chapter forty-four-a, which is titled the "West Virginia Guardianship and Conservatorship Act." However, since the new act will not apply to the case before us, we will not attempt to discuss the new act in this opinion. However, we point out that the 1994 legislation significantly changes the current guardianship statutes set forth in *W.Va.Code,* 27–11–1, *et seq.* and *W.Va.Code,* 44–10A–1, *et seq.*

**9.** This Court notes that Sherri D. Goodman, the Chief Disciplinary Counsel for the West Virginia State Bar Committee on Legal Ethics, wrote a letter dated August 27, 1993, to Donald Lambert, the attorney representing the intervenors in the case before us, and James Douglas, the attorney representing the committee members in the case before us, in which she stated that "this issue should be resolved by the Circuit Court on Mr. Lambert's motion to disqualify."