680 S.E.2d 120

**In re Jean Holly DANDY,
A Protected Person.**

**No. 34398.**

Supreme Court of Appeals of
West Virginia.

Submitted April 8, 2009.

Decided June 23, 2009.

James Wilson Douglas, Esq., Sutton, WV, Appellant, Pro se.

Cammie L. Chapman, Esq., Breckinridge Davis Sproles & Chapman, PLLC, Summersville, WV, for the Appellee Jean Holly Dandy.

James Robert Milam, II, Esq., Prosecuting Attorney's Office, Summersville, WV, for the Appellee Ronald Bowers.

## PER CURIAM.

■ This case is before the Court upon an appeal of James Douglas, who brings the instant appeal pro se,[1] although he was the

1. We note at the outset that Mr. Douglas is not a party to the action below. He is pursuing the instant appeal as a self-proclaimed "intervenor-in-fact" or "de facto party;" however, Mr. Douglas has never taken any action pursuant to West Virginia Rule of Civil Procedure 24 or West Virginia Rule of Appellate Procedure 22 to intervene in the action. West Virginia Code § 58-5-1 (2005) provides that "[a] **party** to a civil action may appeal to the Supreme Court of Appeals from a final judgment of any circuit court...." *Id.* (Emphasis added). Additionally, West Virginia Code § 58-5-3 provides that "[a] party desiring to appeal, seeking the original jurisdiction of the Supreme Court of Appeals, or seeking an opinion of the Court on certified questions may file a petition in accordance with Rules of Appellate Procedure promulgated by the Supreme Court of Appeals." *Id.* Likewise the West Virginia Rules of Appellate Procedure contemplate the filing of a petition for appeal by a party as the rules refer to petitioner or appellant which are terms defined as "the party." W. Va. R. of App. Pro. 1.

In syllabus point one of *Wade v. Carney,* 68 W.Va. 756, 70 S.E. 770 (1911), this Court held that "[o]ne cannot appeal a case to this court unless he has been a party to the controversy in the circuit court, or stands in the place of such

party as legal representative." *Id.;* Syl. Pt. 2, *Henderson v. Potter Orphan Home,* 103 W.Va. 60, 136 S.E. 605 (1927)(holding that "[o]nly parties to such a suit or decree are entitled to be heard upon appeal").

In order for Mr. Douglas to pursue the instant appeal in his own right, he should have complied with the West Virginia Rules of Civil Procedure and intervened in the action below for the purposes of appealing the lower court's adverse ruling regarding his attorney's fees. Alternatively, Mr. Douglas could have filed a petition for writ of prohibition with this Court without intervening in the action, as we have previously held that any person whose rights are affected by the action or proceeding in a lower court in which that court allegedly exceeded its legitimate powers may pursue a writ of prohibition in this Court. Syl. Pt. 2, *State ex rel. Goodwin v. Cook,* 162 W.Va. 161, 248 S.E.2d 602 (1978)(" 'As a general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition; but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so.' Syllabus Point 6, *Linger v. County Court,* 150 W.Va. 207, 144 S.E.2d 689 (1965)."); W. Va.Code § 53-1-1 (2000); W. Va. R.App. P. 14. Mr. Douglas, however, chose to

former attorney for Donna Meadows, the guardian of Jean Holly Dandy,[2] from the March 12, 2008,[3] Order of the Circuit Court of Nicholas County. The circuit court ordered Mr. Douglas to repay Ms. Dandy's estate certain sums that had been paid to Mr. Douglas in his representation of Ms. Meadows. Specifically, the circuit court directed, in pertinent part, as follows:

3. Any compensation from Ms. Dandy's estate by received [sic] Mr. Douglas for services rendered subsequent to Ms. Dandy's competency hearing on December 15, 2005, is to be returned to the Estate of Dandy.

4. Any compensation from Ms. Dandy's estate received by Mr. Douglas for the Writ of Prohibition is to be returned to the Estate of Dandy.

5. Considering the foregoing, Mr. Douglas is only entitled to receive from Ms. Dandy's estate compensation for services rendered through the December 15, 2005, hearing excluding costs associated with the Writ of Prohibition. Based on the itemized bills submitted to the court, Mr. Douglas may receive from Ms. Dandy's estate no more than $7,198.75 for his services (nearly 36.92 hours at $195 per hour), plus $237.91 for expenses, for a total of $7,436.66 in this matter. Any compensation received by Mr. Douglas in excess of this amount is to be returned to the Estate of Dandy.

6. Ms. Chapman is to continue serving as Ms. Dandy's Guardian ad Litem in this matter until she files a report with the

Court indicating that all funds are returned, as herein ordered, to the Estate of Jean Dandy.

The issues raised by Mr. Douglas on appeal are as follows: 1) whether the powers and authority of a guardian ad litem in this context are defined and limited by West Virginia Code § 44A–2–7 (2004) under which the guardian ad litem is appointed to represent an alleged protected person; 2) whether the duties and authority of a guardian ad litem appointed pursuant to West Virginia Code § 44A–2–7 to represent an alleged protected person end when the guardian or conservator is appointed and the appeal period has expired; 3) whether an attorney-in-fact, utilizing the funds of her principal and alleged protected person, can employ legal counsel for the purposes of protecting the person or property of the principal, or for the purposes of litigating the issue of who will be chosen as the principal's conservator or guardian; 4) whether a circuit court exceeds its authority in ordering an attorney to refund a portion of his fees to one other than his non-complaining client; and 5) whether a circuit court that orders an attorney to refund a portion of his fees to one other than his client violates the attorney's and his client's right to contract, as guaranteed to him by the United States Constitution.[4] Based upon our review of the parties' briefs and arguments, the record, and all other matters before the Court, we find that the circuit court did not abuse its discretion in ordering Mr. Douglas to repay the protected person's estate some attorney's fees that the circuit court found Mr. Douglas was not entitled to receive from the estate.

proceed with this appeal on his own behalf. It is troubling that Mr. Douglas failed to follow the proper procedural steps set forth in the West Virginia Code, the West Virginia Rules of Civil Procedure, and the West Virginia Rules of Appellate Procedure to ensure a properly effected appeal. Notwithstanding this, there is at least one case decided by the court in which a guardian ad litem was permitted to appeal a reduction in his attorney's fee apparently without being a named party to the action below. *Erwin v. Henson*, 202 W.Va. 137, 502 S.E.2d 712 (1998).

Because the circuit court's Order directly impacts Mr. Douglas, the Court will resolve this appeal. The Court's decision to do so, however, should in no way be considered as condoning the method used to pursue the instant appeal.

**2.** Ms. Dandy died on May 31, 2008.

**3.** The circuit court's Order was originally entered October 10, 2007; however, none of the parties were advised of the circuit court's decision until February 28, 2008, when the parties were provided copies of the October 10, 2007, Order. Because of this delay, the circuit court reissued its October 10, 2007, Order by a supplemental Order dated March 12, 2008, styled "Agreed Order Reissuing Final Order *Nunc Pro Tunc*."

**4.** While the Appellant raised five assignments of error, upon review, the Court has consolidated the errors into two issues.

Accordingly, we affirm the decision of the Circuit Court of Nicholas County.

## I. Facts and Procedural History

Prior to her protected person status, on April 12, 2001, Jean Holley Dandy, the protected person in the instant action, while a fully competent resident of Kentucky, hired an attorney to draft a power of attorney naming her granddaughter, Donna Meadows, as her attorney-in-fact. In late 2004 or early 2005, Ms. Dandy began to experience problems that prevented her from continuing to live in an independent manner. Ms. Meadows arranged for Ms. Dandy to move to Nicholas County, West Virginia, so that she could better care for her grandmother.

On March 7, 2005, Ms. Dandy's son, Ronald Bowers, filed a petition in the Circuit Court of Nicholas County, seeking his appointment as guardian and conservator for his mother. On March 18, 2005, the court appointed Cammie L. Chapman as legal counsel or guardian ad litem for Ms. Dandy, pursuant to the provisions of § 44A–2–7(a).[5] Mr. Bowers' petition, however, was dismissed by the circuit court in an Order entered September 6, 2005, due to Mr. Bowers' request that it be withdrawn because of the omission in the petition of a physician's evaluation of Ms. Dandy as required by West Virginia Code § 44A–2–3.[6]

On July 15, 2005, Mr. Bowers re-filed the petition, which gives rise to the instant appeal, in the Circuit Court of Nicholas County, again seeking his appointment as guardian and conservator for his mother. The circuit court again appointed Ms. Chapman as guardian ad litem. Mr. Douglas represented Ms. Meadows throughout both petitions.[7] Although Ms. Dandy was not personally served with the petition, Ms. Dandy's guardian ad litem was properly served. Notwithstanding this fact, Ms. Meadows filed a writ of prohibition in this Court on September 12, 2005, regarding the service issue. The writ was refused on September 15, 2005.

Following hearings[8] on December 9 and 15, 2005,[9] the circuit court found Ms. Dandy to be a protected person.[10] Ms. Meadows was appointed as temporary guardian and the Nicholas County Sheriff was appointed to serve as temporary conservator until a final determination could be made. On May 22 and 23, 2006, the circuit court conducted additional hearings, which resulted in Ms. Meadows being appointed permanent guardian and the Nicholas County Sheriff being appointed as permanent conservator. Fol-

5. West Virginia Code § 44A–2–7(a) provides, in pertinent part, that "[t]he court shall appoint legal counsel for the alleged protected person." *Id.*

6. West Virginia Code § 44A–2–3 (2004) provides that "[t]he petition shall include a report by a licensed physician or psychologist evaluating the condition of the alleged protected person[.]" *Id.* The statutory provision further sets forth various information that must be furnished by the physician or psychologist regarding the alleged protected person's condition. *Id.*

7. Mr. Bowers moved the circuit court to proceed on the second petition without the requisite physician's evaluation. The circuit court denied Mr. Bowers' motion and ordered a physician's evaluation of Ms. Dandy. The circuit court also noted in its final Order that "although Ms. Dandy was served personally with neither the G–13 Petition, the 'Motion to File Petition Without Evaluation,' nor notice of the hearing on this motion, Ms. Dandy's Guardian ad Litem, Ms. Chapman, had been properly served."

8. *See* W. Va.Code § 44A–2–10 (2004) and W. Va.Code § 44A–2–14 (2004).

9. The December 15, 2005, date was the date used by the circuit court as the cut-off for compensation to Mr. Douglas from Ms. Dandy's estate as this was the date Ms. Dandy's competency was resolved by the circuit court.

10. A "protected person" is defined in West Virginia Code § 44A–1–4(13) (2004) as follows:

an adult individual, eighteen years of age or older, who has been found by a court, because of mental impairment, to be unable to receive and evaluate information effectively or to respond to people, events, and environments to such an extent that the individual lacks the capacity: (A) To meet the essential requirements for his or her health, care, safety, habilitation, or therapeutic needs without the assistance or protection of a guardian; or (B) to manage property or financial affairs or to provide for his or her support or for the support of legal dependents without the assistance or protection of a conservator. A finding that the individual displays poor judgment, alone, is not sufficient evidence that the individual is a protected person within the meaning of this subsection. . . .
*Id.*

lowing the May hearings, the circuit court ordered the guardian ad litem, Ms. Chapman, to conduct an accounting of any compensation Ms. Meadows and her attorney, Mr. Douglas, had charged to Ms. Dandy's estate. The circuit court then directed Ms. Chapman to review the submissions, together with her own fees and expenses charged to Ms. Dandy's estate, and to present the circuit court with a report of questionable expenditures.

Ms. Chapman's report, dated October 4, 2006, revealed, in relevant part, that:

1) Mr. Douglas reported being paid a total sum of $17,447.50 by Ms. Dandy's estate;

2) Mr. Douglas received $9,912.50 for defending the first petition that was withdrawn and the re-filed petition; and

3) Mr. Douglas received a flat fee of $7,535.00 for the writ of prohibition.

By Order entered December 28, 2006, regarding a December 18, 2006, hearing relative to the report of the guardian ad litem, the circuit court stated that "[o]n or before February 15, 2007, Mr. Douglas may file a memorandum of law justifying the fees paid to him by the Estate of Jean Dandy." [11] The circuit court found that

under Kentucky law, a power of attorney agreement does not convey presumptive authority to the attorney-in-fact to oppose a guardian appointment. As a result, the Court finds that the work performed by Mr. Douglas in seeking Ms. Meadows' appointment as guardian was work performed on behalf of Ms. Meadows, not Ms. Dandy, and was thereby beyond the scope of the Power of Attorney Agreement and beyond the scope of services that Ms. Dandy should be required to pay for. Thus, the Court finds that Mr. Douglas is not entitled to charge Ms. Dandy's estate for services he performed after the issue of competency was determined, which oc-

curred following the hearing on December 15, 2005.

Finally, the Court finds that the costs and fees charged by Mr. Douglas to Ms. Dandy's estate should not include those incurred for the Writ of Prohibition. The decision to file the Writ of Prohibition was made by Ms. Meadows and her counsel. It was no way beneficial to Ms. Dandy and it would not be fair that her estate be charged for it. Further, Mr. Douglas did not itemize the charges for the Writ and the Court does not award attorney's fees on a flat rate basis. Thus, the Court finds it inappropriate to charge Ms. Dandy's estate for the Writ.

Thereafter, by Order entered on March 12, 2008, the circuit court ordered Mr. Douglas to repay to Ms. Dandy's estate $2,687.50 of the $9,912.50 paid from the estate as that amount was charged to the estate after the December 15, 2005, hearing. Additionally, Mr. Douglas was directed to repay to Ms. Dandy's estate the $7,500.00 fee charged for the writ of prohibition.[12] It is the repayment of the attorney's fee charged in connection with the writ of prohibition that is at the heart of Mr. Douglas' appeal.

## II. Standard of Review

■ The standards of review applicable in this Court's review of the final Order entered in this matter are as follows:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). It is with these standards in mind that we now review the case before us.

---

**11.** Although Mr. Douglas apparently filed something with the circuit court in response to the circuit court's directive, it was not included in the record, nor designated by Mr. Douglas for purposes of the appeal.

**12.** Ms. Meadows was also ordered to pay back to the estate the sum of $13,800.00, which did not include any attorney's fees; however, no appeal was taken regarding any of the circuit court's rulings relating to Ms. Meadows.

## III. Discussion of Law

### A. The circuit court did not err in not terminating the guardian ad litem's role upon appointment of the guardian and conservator for the protected person.

The first issue raised in this matter concerns the powers and authority of the protected person's legal counsel or guardian ad litem. Mr. Douglas maintains that the guardian ad litem's role should have terminated when the guardian was appointed. Further, Mr. Douglas asserts that the lower court improperly assigned the guardian ad litem the role of determining the propriety of his attorney's fees.

West Virginia Code § 44A-2-7 requires the circuit court to appoint counsel for an alleged protected person as follows:

(a) The court shall appoint legal counsel for the alleged protected person. In appointing legal counsel, the court shall consider any known preferences of the alleged protected person

(b) Legal counsel shall have the following major areas of concern: (1) Whether or not a guardian is needed; (2) limitation of the role of the guardian to the protected person's specific needs—e.g., personal supervisor, business affairs, medical consent only; (3) if needed, assure that the person or entity with the greatest interest in the protected person is appointed; (4) if needed, assure the adequacy of the bond; and (5) if needed, assure consideration of proper placement.

(c) In responsibly pursuing the major areas of concern set forth in subsection (b) of this section, counsel may perform any or all of the following: (1) Promptly notify the individual and any caretaker of the appointment of counsel; (2) contact any caretaker, review the file and all other relevant information; (3) maintain contact with the client throughout the case and assure that the client is receiving services as are appropriate to the client's needs; (4) contact persons who have or may have knowledge of the client; (5) interview all possible witnesses; (6) pursue discovery of evidence, formal and informal; (7) file appropriate motions; (8) obtain independent psychological examinations, medical examinations, home studies, as needed; (9) advise the client on the ramifications of the proceeding and inquire into the specific interests and desires of the individual; (10) subpoena witnesses to the hearing; (11) prepare testimony for cross-examination of witnesses to assure relevant material is introduced; (12) review all medical reports; (13) apprise the decision maker of the individual's desires; (14) produce evidence on all relevant issues; (15) interpose objections to inadmissible testimony and otherwise zealously represent the interests and desires of the client; (16) raise appropriate questions to all nominations for guardian and the adequacy of the bond; (17) take all steps to limit the scope of guardianship to the individual's actual needs, and make all arguments to limit the amount of intervention; (18) ensure that the court considers all issues as to the propriety of the individual's current or intended placement and that the limitations are set forth in the order; (19) inform the client of the right to appeal, and file an appeal to an order when appropriate; and (20) file a motion for modification of an order or a petition for writ of habeas corpus if a change of circumstances occurs which warrants a modification or termination.

(d) The protected personal shall have the right to an independent expert of his or her choice to perform an evaluation and present evidence.

*Id.*

The foregoing is an expansive list of items that the legal counsel for the alleged protected person is charged with doing. Moreover, there is no limitation contained within the statute regarding the protected person's legal counsel's role. Significantly, the statute does not terminate the role of the legal counsel upon the appointment of a guardian or conservator; rather, West Virginia Code § 44A-2-7(c)(20) specifically contemplates that the legal counsel may "file a motion for modification of an order or a petition for writ of habeas corpus if a change of circumstances occurs which warrants a modification or termination." *Id.* The filing of such a motion

would occur after the guardian or conservator was appointed.

Mr. Douglas relies upon the decision of the Court in *Sowa v. Huffman,* 191 W.Va. 105, 443 S.E.2d 262 (1994), as support for his position that the guardian ad litem's role terminates upon the appointment of a guardian and conservator and, therefore, the guardian ad litem should not have been ordered to review his legal fees. The guardian ad litem, however, correctly points out that the *Sowa* decision was rendered under West Virginia Code § 27–110–1(b) (1990), which was replaced by West Virginia Code § 44A–2–7 in 1994.

Further, in *Sowa,* the Court stated:

However, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms which may not be disregarded." *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). *See also* syl. pt. 1, *Consumer Advocate Division of the Public Service Commission v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989). Therefore, although we recognize that the current statutes may not adequately protect the incompetent, it is the legislature which must rectify the problem.

191 W.Va. at 111, 443 S.E.2d at 268. Right after the *Sowa* decision, the West Virginia statute was changed by the Legislature. The statute, in its current form known as the West Virginia Guardianship and Conservatorship Act, West Virginia Code §§ 44A–1–1 to –5–9 (2004 and 2008 Supp.), does not provide a termination date for the legal counsel appointed to represent the protected person.

Under the foregoing current statutory provisions, the circuit court did not abuse its discretion in directing the guardian ad litem

as the protected person's legal counsel to review the expenditures of the guardian and the guardian's attorney from the principal's estate, and to remain as guardian ad litem until the expenditure the court ordered Mr. Douglas to repay to Ms. Dandy's estate, indeed, had been repaid.

## B. The circuit court did not err in ordering the guardian's legal counsel to refund a portion of his attorney's fees to the protected person's estate.

■ The power of attorney entered into between Ms. Dandy and Ms. Meadows, prior to Ms. Dandy's competency coming into question, is at the heart of Mr. Douglas' argument that Ms. Meadows was allowed to pay him the subject attorney's fees from Ms. Dandy's estate. Mr. Douglas posits that in the power of attorney that Ms. Dandy signed on April 12, 2001, Ms. Dandy gave Ms. Meadows the power to "(k) sign in my name on all accounts standing in my name, and to withdraw funds from said accounts, to open accounts in my name or her [Meadows] name as my attorney in fact." Further, the power of attorney document, in paragraph (m), authorizes the attorney-in-fact "to retain counsel and attorneys on my behalf, to appear for me in all actions and proceedings to which I may be party in the courts of Kentucky or any other court in the United States."

■ It is significant to note at the outset that all parties agree and the law is clear that the power of attorney is governed by the laws of the State of Kentucky as that is the state where Ms. Dandy resided when she executed the power of attorney.[13] The circuit court determined that the language contained within the power of attorney did not authorize Ms. Meadows to hire an attorney to seek Ms. Meadows' appointment as guardian or conservator and to pay for this attorney with funds from the principal's, Ms. Dandy's, estate. What the power of attorney did allow was for Ms. Meadows "to retain counsel and attorneys on *my* [referring to Ms. Dandy] behalf, to appear for *me* in all actions

13. *See generally* 2A C.J.S. *Agency* § 2 (2009) ("Generally the courts will apply the law of the place of execution of a power of attorney in determining the validity of such a document, and in construing and interpreting it and determining its scope.")

and proceedings to which I may be party in the courts of Kentucky or any other court in the United States." (Emphasis in original). The law in Kentucky is clear that a power of attorney is not a substitute for appointment of a guardian and cannot prevent the institution of guardianship proceedings. *Rice v. Floyd,* 768 S.W.2d 57, 61 (Ky.1989). As the circuit court correctly determined in the instant matter,

> [i]n other words, under Kentucky law, a power of attorney agreement does not convey presumptive authority to the attorney-in-fact to oppose a guardian appointment. As a result, the Court finds that the work performed by Mr. Douglas in seeking Ms. Meadows' appointment as guardian was work performed on behalf of Ms. Meadows, not Ms. Dandy, and was thereby beyond the scope of the Power of Attorney Agreement and beyond the scope of services that Ms. Dandy should be required to pay for.

Thus, the circuit court concluded that while Ms. Meadows could hire an attorney on behalf of Ms. Dandy for purposes of determining Ms. Dandy's competency, the circuit court determined that Mr. Douglas was not entitled to charge Ms. Dandy's estate for the services he performed after the issue of competency was determined, which occurred following the December 15, 2005, hearing. The Court finds, based upon the application of Kentucky law, that the circuit court committed no error in reaching this decision.

■ Further, under the relevant Kentucky law, the circuit court concluded that Mr. Douglas could not receive any costs associated with the filing of a writ of prohibition with this Court, even though the writ of prohibition was filed prior to Ms. Dandy's competency determination on December 15, 2005.[14] Specifically, the circuit court found that

> the decision to file the Writ of Prohibition was made by Ms. Meadows and her counsel. It was no way beneficial to Ms. Dandy and it would not be fair that her estate

---

14. The writ of prohibition was filed on September 12, 2005.

15. In reaching this determination, however, the Court is in no way ruling that a flat fee is unreasonable under all circumstances for the filing of a petition on an appellate matter, as there very well may be cases in which such a fee

be charged for it. Further, Mr. Douglas did not itemize the charges for the Writ and the Court does not award attorney's fees on a flat rate basis. Thus, the Court finds it inappropriate to charge Ms. Dandy's estate for the Writ.

In the instant matter, the circuit court provided Mr. Douglas with ample opportunity to justify the attorney's fee he charged for the writ of prohibition by way of requesting that Mr. Douglas submit additional support for the attorney's fee he received from the estate for the writ of prohibition. Mr. Douglas did not include a copy of his submission in the file on appeal, but it apparently failed to provide the Court with any justification for the $7,500.00 fee he charged for the filing of a seven-page writ of prohibition, with a 14 point font, on a technical point that the circuit court determined "was in no way beneficial to Ms. Dandy." The Court finds the circuit court did not err in this conclusion.[15]

## IV. Conclusion

For the reasons set forth herein, we affirm the decision of the Circuit Court of Nicholas County.

Affirmed.

---

is proper. All the Court is deciding is that the circuit court's decision that the attorney's fee charged by Mr. Douglas regarding the writ of prohibition must be repaid to the estate under the facts and law of the case sub judice is not erroneous.