# HARRY J. KICHERER *v.* ROBERT KICHERER

[No. 109, September Term, 1978.]

*Decided May 4, 1979.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*William Bogen* for appellant.

*Henry J. Monahan,* with whom was *John C. Monahan* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

We have before us in this case a volcanic family feud that has erupted in the form of a dispute over the propriety of the Circuit Court for Montgomery County's appointment of Harry J. Kicherer, M.D., and his adopted son, Robert G. Kicherer, as co-guardians of the person and property of Priscilla A. Kicherer, a mentally-ill "disabled person" who is, respectively, the wife and natural mother of the guardians. In their separate appeals, each fiduciary claims that the circuit court erred in naming the other and seeks a reversal of his associate's appointment. While the acrimonious state of the relationship between father and son, quite evident from the record before us, casts considerable doubt upon the wisdom of the chancellor's decision to designate them as co-guardians, we nonetheless may not disturb that determination because each, by his actions subsequent to the noting of his appeal, has effectively withdrawn it.

The present litigation commenced on August 12, 1977, when Dr. Kicherer petitioned the Circuit Court for Montgomery County, as permitted by Maryland Rule R71,[1] to be appointed the guardian of both the person and property of his wife, who, he stated, "no longer [had] the capacity, either physically or mentally, to care for herself and her business matters." Notice of the proposed guardianship was given to the five adult children of Mrs. Kicherer, Md. Rule R74 b, four of whom consented to their father being

---

1. Guardianships of both minors and disabled persons are now governed in Maryland by statute, Md. Code (1974 & 1978 Cum. Supp.), §§ 13-201 to 222, -701 to 710 of the Estates and Trusts Article, and the Maryland Rules, Md. Rules R70-R80.

designated as guardian for their mother. Robert, the eldest son, objected to the appointment as not being in the best interests of his mother, and requested that a hearing be conducted relating to this issue. Md. Rule R77 b 2. Since all the parties concerned agreed that Mrs. Kicherer was a "disabled person"[2] in need of a guardian both as to her person and property, at the hearing held on May 5, 1978, the sole contested issue before the chancellor was the designation of the person or persons to be given this management responsibility by the court. In the course of the hearing various allegations with regard to the moral character of Dr. Kicherer were raised by Robert, as well as charges concerning his father's prior lack of care for his mother's person and property. These included claims of adultery, misrepresentation of assets, self-dealing, and a total disregard for his wife's personal needs.

After considering the evidence, the court, on May 16, 1978, entered its decree appointing Mrs. Kicherer's husband and her son Robert as co-guardians of her person and property.[3]

---

2. A "disabled person" is defined under section 13-101 of the Estates and Trusts Article as:

> (d) ... a person other than a minor who:
> (1)(i) Has been judged by a court to be unable to manage his property for reasons listed in § 13-201 (c)(1) of this subtitle [(physical or mental disability, senility or other mental weakness, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, confinement, detention by a foreign power, or disappearance)]; and
> (ii) As a result of this inability requires a guardian of his property; or
> (2)(i) Has been judged by a court to be unable to provide for his daily needs sufficiently to protect his health or safety for reasons listed in § 13-705(b) of this subtitle [(mental disability, senility, other mental weakness, disease, habitual drunkenness, or addiction to drugs)]; and
> (ii) As a result of this inability requires a guardian of the person.
> [Md. Code (1974, 1978 Cum. Supp.), § 13-101(d) of the Estates and Trusts Article.]

3. We note that the decree in the instant case does not comply with the requirements of Maryland Rule R78. Although the memorandum accompanying the decree states that "it has been stipulated that Priscilla Kicherer is suffering from a mental disease which mandates that she receive assistance for her person and her estate," such a statement was not incorporated in the decree and such a stipulation is not "a specific finding by the court," so as to comply with Rule R78's requirement that "[t]he decree shall include a specific finding by the court as to ... the nature of the disability." Md. Rule R78 a.

In his memorandum accompanying the order, the chancellor characterized Dr. Kicherer as "a well-to-do man who has testified as to his love for his wife and family" and found that, not having dissipated his wife's assets or engaged in conduct that would render him morally unfit to serve, the doctor would be a suitable guardian. Despite this determination, however, the judge further explained that "to exclude any possible avenue of temptation" he was appointing Robert Kicherer co-guardian. When cross-motions to revise this order and for a rehearing were denied by the court, the two guardian-designates noted separate appeals. We granted certiorari prior to the matter being considered by the Court of Special Appeals.

Each of the individual fiduciaries present for our disposition a different issue concerning the circuit court's appointment of his co-guardian. Dr. Kicherer contends the trial court lacked authority to appoint his son as co-guardian because Robert failed to file a petition indicating his desire to serve and because the court failed to notify any interested person as to Robert's potential appointment and did not conduct a hearing to determine his fitness to act as guardian. The son, on the other hand, asserts that the circuit court's appointment of his father was not in the best interests of his mother in light of the evidence adduced at the hearing. We find that we need not consider these assertions for each guardian, by accepting his appointment, waived his right to prosecute further his appeal.

Our conclusion in this regard follows from the "well-established rule in this State that unless the decree also adjudicates a separate and unrelated claim in favor of a litigant, he cannot, knowing the facts, both voluntarily accept the benefits of a judgment or decree and then later be heard to question its validity on appeal." *Suburban Dev. Corp. v. Perryman,* 281 Md. 168, 171, 377 A. 2d 1164, 1165 (1977) (per curiam) (citing authorities). Put another way, as to related claims adjudicated in the same action, one cannot "have his cake and eat it too" by accepting the rewards of those portions of the decree he finds palatable while reserving the right to contest the balance. *See Silverberg v. Silverberg,* 148

Md. 682, 689, 130 A. 325, 327-28 (1925). In the case now before us, each guardian-designate, after filing a notice of appeal, signified his acceptance of the trial court's decree and his appointment under it by submitting his bond, thereby qualifying as, and becoming, a guardian. *See* Md. Code (1974), § 13-206 (a) of the Estates and Trusts Article. Having acknowledged the conclusiveness of the portion of the decree that was in accord with his wishes, neither fiduciary can now complain on appeal concerning the component of the order that, contrary to his preference, designates a co-guardian. Thus, even assuming that the adversary guardians here could obtain review of the issues they seek to prosecute in this appeal,[4] each has forfeited his right to present further his contentions and we will dismiss the appeals as moot. Md. Rule 835 a 6.

Normally when we dismiss an appeal for this reason and in this manner nothing remains to be said. Nonetheless we are so appalled by the petty bickering between the co-guardians, as disclosed by the record and statements made by counsel at oral argument, that we are compelled to observe that such wrangling should not be tolerated further by the chancellor.[5] Lest sight be lost of the fact, we remind all concerned that a court of equity assumes jurisdiction in guardianship matters to protect those who, because of illness or other disability, are unable to care for themselves. In reality the court is the guardian; an individual who is given that title is merely an agent or arm of that tribunal in carrying out its sacred responsibility. *See, e.g., Ellicott v. Warford,* 4 Md. 80, 85 (1853); *Seattle-First Nat. Bank v. Brommers,* 89 Wash.2d 190, 570 P. 2d 1035, 1041 (1977) (citing authorities). *See generally* 1 W. Blackstone, *Commentaries* \* 463. Whereas

---

4. Even if these appeals had not become moot, there is considerable authority creating doubt as to whether either guardian, individually or in his official capacity, is a proper party to litigate the issues he seeks to raise here. *See, e.g.,* Hundley v. Hundley, 229 Md. 393, 395, 182 A. 2d 884, 885 (1962); Pattison v. Corby, 226 Md. 97, 101, 172 A. 2d 490, 492 (1961); Preston v. Poe, 116 Md. 1, 6, 81 A. 178, 179 (1911); Ellicott v. Warford, 4 Md. 80, 85-86 (1853).

5. It is suggested that because of the disagreement between the co-guardians Mrs. Kicherer has not been permitted to leave the grounds of the nursing home in which she resides, to receive new eyeglasses, to have any change in the medication or medical care she requires, or the like.

consanguinity is a factor that may well be given consideration by the chancellor in the appointment of a guardian because nearest of kin are more likely to treat a ward with kindness and affection, *Estate of Rachel Colvin,* 3 Md. Ch. 278, 285-86 (1853); *see* Md. Code (1974 & 1978 Cum. Supp.), §§ 13-207, -707 of the Estates and Trusts Article, all the parties here should be reminded that appointment to that position rests solely in the discretion of the equity court and the administering of that office as it pertains to both the person and property of the ward is subject to judicial control. *See* Md. Code (1974 & 1978 Cum. Supp.), §§ 13-201 (a), -203 (c), -207 (c), -704, -707 (c) of the Estates and Trusts Article. Ordinarily, there is little cause for the court to be concerned on a day-to-day basis with how its agent fulfills his responsibilities, a yearly report from the guardian usually being sufficient to insure that the ward and his property are cared for properly. *See id.* (1974, 1978 Cum. Supp.), § 13-708 (b) (7) of the Estates and Trusts Article (report on health of person); Md. Rule V74 c 2(a) (accounting of property). In this case, however, it obviously is imperative that the chancellor take immediate steps to put an end to the manner in which these co-guardians are performing their duties. It may well be that removal of one or both will be required, *see* Md. Rule V84, otherwise the chancellor may have to direct quite frequently, if not daily, what should take place in order to insure that Mrs. Kicherer's needs are adequately served. In any event, and at a minimum, the filing of reports and accountings clearly must be required on a much more frequent basis than annually, as the present decree provides. So concerned are we that the personal comfort and welfare of Mrs. Kicherer are being neglected we will direct that the mandate in this case issue forthwith so the matter can receive the immediate attention of the chancellor.

> *Appeal dismissed.*
> *Costs to be paid equally by Harry J. Kicherer and Robert G. Kicherer individually and not from the estate of Priscilla A. Kicherer.*
> *Mandate to issue forthwith.*