818 A.2d 1149

**James P. OWINGS,**

v.

**William D. FOOTE, Jr.**

**No. 287, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 30, 2002.

Reconsideration Denied April 10, 2003.

2

**4**

Albert D. Brault (Joan F. Brault and Brault, Graham, Scott & Brault, LLC, on the brief), Rockville, for appellant.

William D. Foote, Jr., Rockville, Brian P. Murphy (Mark G. Griffin and Griffin, Farmer & Murphy, LLP, on the brief, for appellee, Hiser), Washington, for appellee.

Argued before DAVIS, ADKINS, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant James P. Owings appeals from an order dated February 12, 2002, wherein the trial judge of the Circuit Court for Montgomery County granted appellee William D. Foote, Jr.'s third and fourth petitions for interim attorney's fees and awarded appellee fees and expenses in the amount of $52,934.94. On February 22, 2002, appellant filed a motion to alter or amend the judgment, which was subsequently denied. Appellant noted his appeal on April 12, 2002. Appellee filed a brief in response, in which he presented one question, restated as follows:

I. Was the notice of appeal filed by appellant on April 12, 2002 timely, with respect to the judgments that were entered in favor of appellee for attorney's fees?

Because we answer appellee's question in the affirmative, we will address appellant's single question, which we rephrase as follows:

II. Did the trial court err in awarding appellee's petitions for attorney's fees?

We answer appellant's question in the affirmative, thereby reversing the trial court's judgment.

## FACTUAL BACKGROUND

Appellant's mother, Jeanette Owings, is the life beneficiary of two trusts (the residuary trust and the marital trust) established by Osbourn Owings, appellant's father, at the time of his death. Ms. Owings also has a life interest in the Jeanette S. Owings trust. Appellant and Interested Person Gail Hiser[1] are beneficiaries of the three trusts. Furthermore, appellant is the named trustee of the three trusts. The parties contest whether Hiser is a co-trustee.

On January 29, 1999, Ms. Owings filed a complaint against appellant for declaratory and injunctive relief, accounting, return of assets, breach of fiduciary duty, and removal as trustee.[2] Appellant, on February 19, 1999, filed a petition for the appointment of a guardian of the person and property of Ms. Owings, alleging that his mother was unable to make responsible decisions concerning her person, property, and affairs. Also on February 19, 1999, Judge Martha Kavanaugh of the Circuit Court for Montgomery County, who considered the guardianship petition, signed an order that stated:

> ORDERED that pursuant to Estates and Trusts Article, section 13–201, et. seq., Annotated Code of Maryland, and Maryland Rule 10–106(a), [appellee], be and hereby is appointed to serve as counsel for [Ms. Owings], to appear and answer the [p]etition in this proceeding and to represent [Ms. Owings] in any subsequent proceedings arising from this [g]uardianship [p]etition and to act as [Ms. Owings's] temporary [g]uardian of her property.

Below her signature on the order, Judge Kavanaugh also handwrote the following: "This investigation has the consent of the alleged disabled person's two adult children. Moreover,

---

1. Hiser is appellant's sister and the daughter of Osbourn and Jeanette Owings.

2. The suit filed by Ms. Owings was captioned *"Owings v. Owings,* Circuit Court for Montgomery County, C.A. No. 196648." Judge Chapin presided. We will refer to it as the "Track IV litigation."

this [c]ourt finds that this investigation is necessary due to the pending lawsuit, *Owings v. Owings* (196648)."

On April 30, 1999, appellee entered his appearance in the Track IV litigation. He informed the presiding judge, The Honorable James Chapin, that, as a result of a guardianship petition filed by appellant, he had been appointed as Ms. Owings's attorney. Appellee also asserted that he was the temporary guardian of Ms. Owings's property as a result of the pending Track IV litigation, noting that Judge Kavanaugh had indicated that, because "there is the issue out there as to whether [Ms. Owings] can handle her own affairs, we had better have a temporary guardian look into this because there is a fair amount of property involved in the other lawsuit, which is this lawsuit right here." Appellee filed various motions in the Track IV litigation and prosecuted the case on behalf of Ms. Owings. Appellee also continued to act as Ms. Owings's attorney in the guardianship case.

On November 18, 1999, appellant, Ms. Owings, and Hiser reached an oral settlement agreement (the settlement agreement) that resolved issues pertaining to the Track IV litigation, the guardianship petition, and other Owings family matters. The terms of the settlement agreement were reduced to writing on November 22, 1999 by appellant's attorney at the time. Appellant, however, refused to sign the agreement. Consequently, appellee, on behalf of Ms. Owings, filed a motion to enforce the settlement agreement on December 27, 1999. The motion was granted on May 9, 2000. On December 11, 2000, appellant signed the agreement, but noted next to his signature that he was signing "under protest."

The settlement agreement stated that the guardianship proceeding would be dismissed within ten days of the execution of the agreement. Nonetheless, appellant filed oppositions to appellee's two separate motions to have the guardianship petition dismissed. Additionally, on October 18, 2000, appellant filed an emergency motion requesting that the court order Ms. Owings to undergo mental and psychological evaluations, to strike appellee's involvement as attorney and temporary

guardian, and to appoint a separate guardian, attorney, and investigator. The court denied the emergency motion.

Furthermore, the settlement agreement stated that "[t]he trustees of the [Jeanette S. Owings] [t]rust and the [m]arital [t]rust shall pay, from the principal of those trusts . . . the fees and expenses incurred for the services of [appellee] in connection with the guardianship and fiduciary proceedings and in the negotiation and execution of this agreement. . . ." The settlement agreement required payment of appellee's fees through May 9, 2000.

When appellant failed to pay his fees, appellee filed various petitions for interim attorney's fees. At issue in this appeal are appellee's third petition for interim attorney's fees and petition for entry of judgment against appellant, filed on January 2, 2001, and appellee's fourth petition for interim attorney's fees and petition for entry of judgment against appellant, filed on September 17, 2001. The third petition sought to recover fees for services rendered from May 18 through December 15, 2000 in the amount of $25,769.94. The fourth petition requested fees for services rendered from December 16, 2000 through September 7, 2001 in the amount of $27,165. Furthermore, the third and fourth petitions included requests that the award of fees be reduced to judgments against the various trusts and against appellant.

On February 7, 2002, a hearing on appellee's third and fourth petitions for attorney's fees was held. Although the trial court refused to enter judgment against appellant personally, it did enter judgment against the trusts for the requested amounts. Appellant filed a motion to alter or amend the judgment. When that motion was denied on April 5, 2002, appellant noted his appeal on April 12, 2002.

## DISCUSSION

### I

■ Appellee contends that we may not address appellant's issue because he did not file a timely notice of appeal. Ac-

8

cording to appellee, the trial judge entered final judgment at the hearing on February 7, 2002. Appellant did not note his appeal within thirty days of February 7, 2002. Although appellant filed a post-judgment motion, pursuant to Md. Rule 2–534, appellee claims that his motion, which was filed February 22, 2002, was also untimely and did not stay the thirty days within which appellant could note his appeal.

Appellant responds that the trial court did not enter judgment until February 14, 2002. Thus, according to appellant, his post-judgment motion was timely because it was filed within ten days after entry of judgment, causing his appeal to be timely because it was filed within thirty days of the trial court's denial of the post-judgment motion.

Generally, a notice of appeal must be filed within thirty days of the entry of final judgment. Md. Rule 8–202(a). Any party, however, has the option of filing a motion to alter or amend a judgment within ten days after entry of final judgment. Md. Rule 2–534. If a party files a timely post-judgment motion, a notice of appeal must be filed within thirty days "after entry of (1) a notice of withdrawing the motion or (2) an order denying a motion pursuant to Rule 2–533 or disposing of a motion pursuant to Rule 2–532 or 2–534." Md. Rule 8–202(c).

Maryland Rule 2–601(b) addresses the method of entering a judgment:

The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

Thus, in determining whether a final judgment has been entered, we must reference the docket entry. *Waller v. Maryland Nat'l Bank,* 332 Md. 375, 378, 631 A.2d 447 (1993). Docket entries ending with statements such as "order to be filed" or "attorneys to prepare orders" certify that a ruling was not final. *Id.* at 377–78, 631 A.2d 447; *Atlantic Food v.*

*City of Annapolis,* 70 Md.App. 721, 725–27, 523 A.2d 648 (1987).

In the case *sub judice,* the docket entries in question dated February 7, 2002 provide:

2/07/2002 # 145 JI

HEARING ON [APPELLEE'S] THIRD PETITION FOR INTERIM ATTORNEY'S FEES AND PETITION FOR ENTRY OF JUDGMENT (# 109)(WOODWARD, J.)— GRANTED. ORDER TO BE SUBMITTED. PETITION-ER'S COUNSEL APPEARED. RESPONDENT'S COUNSEL APPEARED.

. . .

02/07/2002 # 146 JI

COURT (WOODWARD, J.) ENTERS JUDGMENT IN FAVOR OF [APPELLEE] AGAINST THE TRUST IN THE AMOUNT OF TWENTY–FIVE THOUSAND SEV-EN HUNDRED SIXTY[-] NINE DOLLARS AND NINE-TY–FOUR CENTS ($25,769.94). ORDER TO BE SUB-MITTED.

. . .

02/07/2002 # 147 JI

HEARING ON [APPELLEE'S] FOURTH PETITION FOR INTERIM ATTORNEY'S FEE AND PETITION FOR ENTRY OF JUDGMENT (# 126)(WOODWARD, J.)—GRANTED. ORDER TO BE SUBMITTED.

. . .

02/07/2002 # 148 JI

COURT (WOODWARD, J.) ENTERS JUDGMENT IN FAVOR OF [APPELLEE] AND AGAINST THE TRUST IN THE AMOUNT OF TWENTY–SEVEN THOUSAND ONE HUNDRED SIXTY[-]FIVE DOLLARS ($27,165.00). ORDER TO BE SUBMITTED.

. . .

02/07/2002 # 149 477 JI

[APPELLEE'S] ORAL MOTION FOR JUDGMENT AS TO ATTORNEY FEES GRANTED ON JUNE 29, 2000 AT TAB # 91 (WOODWARD, J.)—GRANTED.

. . .

02/07/2002    # 150 JI

COURT (WOODWARD, J.) ENTERS JUDGMENT IN FAVOR OF [APPELLEE] AGAINST THE TRUST IN THE AMOUNT OF THIRTY-TWO THOUSAND EIGHT HUNDRED EIGHTY DOLLARS AND THIRTY CENTS ($32,880.30) WITH INTEREST OCCURRING FROM JUNE 29, 2000.  ORDER TO BE SUBMITTED.

■ In all but one docket entry, the language "order to be submitted" is included.  The only entry that does not include the language "order to be submitted" references "Tab # 91," which is a docket entry concerning appellee's *second* petition for interim attorney's fees.  Because a docket entry establishes an order's finality and date of finality, final judgment regarding appellee's third and fourth petitions was not entered on February 7, 2002.  Instead, judgment was entered on February 12, 2002, as indicated by subsequent docket entries.  Therefore, appellant's appeal was timely noted and we may address its merits.

## II

Appellant contends that the trial court erred when it granted appellee's third and fourth petitions for attorney's fees.  Specifically, appellant avers that the award of attorney's fees was improper in light of our holding in *In re Sonny E. Lee*, 132 Md.App. 696, 754 A.2d 426 (2000).  Appellant also contends that the court erred in awarding attorney's fees because appellee exceeded his court appointment and appeared as Ms. Owings's attorney in the Track IV litigation.  Finally, appellant asserts that the trial court "erred in awarding attorney's fees against the trustee of the Jeanette S. Owings Trust, the residuary trust and the marital trust where the trustee was not a party to the guardianship proceedings in his capacity as

trustee." We will address each of appellant's contentions in turn.

## A

In this appeal we are asked to revisit *In re Lee*, in which we decided that counsel assumed conflicting roles when he attempted to discharge the duties of a guardian *ad litem* and counsel representing the same party. Appellant claims that the holding of *In re Sonny E. Lee* requires us to hold that the trial court erred in granting appellee's petitions for attorney's fees. According to appellant, appellee acted as Ms. Owings's counsel, temporary guardian of property, and court investigator. Appellant states, "[Appellee], thus, engaged in a clear conflict of interest, which tainted these proceedings and precludes the award of attorney's fees at issue." We will first address whether a conflict of interest arose as a result of appellee's alleged appointment as a court investigator. Subsequently, we will discuss whether a conflict existed because appellee acted as Ms. Owings's court-appointed attorney and the temporary guardian of her property.

### 1

In *In re Lee*, Lee's daughter filed a petition for the appointment of a guardian of the person and property for her father, seeking specifically to have herself declared as legal guardian. *Id.* at 701, 754 A.2d 426. Shortly thereafter, the trial court issued an order appointing an attorney to represent Lee in the pending guardianship proceeding. Lee's court-appointed attorney filed a motion for protective order to prevent the deposition of her client. Furthermore,

court[-]appointed counsel waived [Lee's] presence at trial in spite of his statutory right and desire to be there, prepared and submitted to the court a report containing recommendations that flatly contradicted [Lee's] wish that a person other than a member of his family be appointed as his guardian, and sought to prevent a hearing on the issue of his disability by declining to request such a hearing and

then by objecting to the introduction of all testimony on that issue.

*Id.* at 718, 754 A.2d 426.

When the court found that Lee's daughter should be the guardian, Shannon, Lee's son and an interested party, appealed. Shannon contended that Lee was not afforded adequate legal representation throughout the guardianship proceeding as required by Maryland law and the Rules of Professional Conduct. *Id.* Specifically, Shannon asserted that Lee's counsel was "acting throughout [the] proceeding as an investigator for the court, or perhaps a guardian *ad litem*, but not as his attorney." *Id.* We agreed.

▪ We opined that, under certain circumstances, an attorney's duties may directly conflict with the duties of a guardian *ad litem*. Due process demands that an attorney "explain the proceedings to his client and advise him of his rights, keep his confidences, advocate his position, and protect his interests." *Id.* at 718–19, 754 A.2d 426 (citations omitted). A guardian *ad litem*, on the other hand, impartially investigates the facts of the case, independently assesses the need for a guardian, and renders a report to the court. The investigator's report may disclose the alleged disabled person's confidences and may make recommendations that conflict with his or her wishes. *Id.* at 719, 754 A.2d 426. We held that, because Lee's attorney acted as an independent investigator for the court and "became virtually the principal witness against [Lee's] stated position," Lee was denied adequate legal representation throughout the guardianship proceedings. *Id.* at 721, 754 A.2d 426.

▪ In the case *sub judice*, appellant submitted two orders to the court—one requesting appointment of an independent investigator and one requesting appointment of counsel to represent Ms. Owings throughout the guardianship proceedings. The court did not act upon appellant's request to appoint an independent investigator and the order remains unsigned. The court did, however, sign the order appointing appellee to serve as counsel to Ms. Owings.

Appellant contends that, although Judge Kavanaugh did not sign the order appointing appellee as an independent investigator, she implicitly meant for appellee to act as such. Appellant bases his contention on the two statements that Judge Kavanaugh handwrote at the bottom of the order appointing appellee to serve as counsel: "This investigation has the consent of the alleged disabled person's two adult children. Moreover, this [c]ourt finds that this investigation is necessary due to the pending lawsuit, *Owings v. Owings* (196648)." We do not agree that this language, standing alone, is sufficient to prove that appellee acted as a court-appointed investigator, conflicting with his role as Ms. Owings's attorney. Thus, we examine his actions.

Unlike the court-appointed attorney in *In re Lee*, the record is replete with evidence indicating that appellee acted in the best interests of his client—Ms. Owings. He sought to have the guardianship proceedings dismissed in compliance with Ms. Owings's wishes and the terms of the settlement agreement, despite appellant's protests and noncompliance with the agreement. Moreover, appellee never held himself out to be an independent, court-appointed investigator. Notably, he never submitted a report to the court summarizing his independent findings. Thus, because there was no conflict, we discern no error regarding this issue.

2

Appellant further contends that there was a conflict under *In re Lee* because appellee assumed the dual roles of counsel for Ms. Owings and temporary guardian of her property. Although *In re Lee* discusses the conflict arising from one person acting as both an attorney and a guardian *ad litem*, it is applicable to the case at hand.

A court-appointed attorney must act in the client's best interest and diligently advocate his or her position. *In re Lee*, 132 Md.App. at 720, 754 A.2d 426. A temporary guardian of property, on the other hand, is an agent of the court and is concerned with its ward's best interest from the court's point

of view. An individual who is appointed as a guardian "is merely an agent or arm of [the court] in carrying out its sacred responsibility." *Kicherer v. Kicherer*, 285 Md. 114, 118, 400 A.2d 1097 (1979). In *In re Lee*, we opined that "[t]he duty to maintain 'as far as reasonably possible . . . a normal client-lawyer relationship" precludes an attorney from acting solely as an arm of the court. . . ."

In the case *sub judice*, appellee complied with Judge Kavanaugh's order and acted as Ms. Owings's attorney, as well as the temporary guardian of her property. In doing so, appellee unwittingly engaged in a conflict of interest. Although *In re Lee* does not mandate that an attorney who engages in such a conflict is precluded from an award of fees, the Court of Appeals has previously opined that, "[u]nder certain circumstances, an attorney's fee may be forfeited where the attorney represents conflicting interests." *See Somuah v. Flachs*, 352 Md. 241, 251, 721 A.2d 680 (1998)(citing *Atlantic Richfield Co. v. Sybert*, 295 Md. 347, 354, 456 A.2d 20 (1983), in which the court noted that an attorney's fee agreement may be set aside if the attorney simultaneously engaged in adverse interests without disclosing the conflict to the client).

We hold, however, that the trial court did not commit error in granting appellee's petitions for fees, despite the existing conflict. Appellee was merely complying with Judge Kavanaugh's court order. Because appellee was simply obeying a court order that inadvertently created a conflict, we opine that it was proper for the trial court to decline to find that the conflict warranted a denial of attorney's fees.

## B

Appellant next contends that the trial court's award of attorney's fees was improper because appellee exceeded his court-appointment and appeared as Ms. Owings's attorney in the Track IV litigation. According to appellant, appellee exceeded his authority by filing and prosecuting motions on Ms. Owings's behalf in the Track IV litigation, despite the fact that Charles Fuller had been retained to represent her. Ap-

pellant avers that, instead of fully investigating Ms. Owings's mental acuity, appellee "took the Hiser side in the Track IV litigation and in negotiations to settle the same."

Appellant cites no Maryland law in support of his assertion that appellee's actions warrant a denial of attorney's fees. In fact, he cites no law whatsoever on this issue in his brief to provide guidance to the Court. Nonetheless, we opine that the trial court did not err in refusing to find that appellee's involvement in the Track IV litigation was unreasonable and unauthorized. The order appointing appellee counsel and temporary guardian alerted appellee to the Track IV litigation. The guardianship case and Track IV litigation were recognized as companion cases throughout the litigation and were eventually consolidated on March 5, 2001 because of the many overlapping issues. Thus, the trial court did not err in its grant of attorney's fees despite appellant's contention that appellee exceeded his scope of duty.

## C

Finally, appellant contends that the trial court erred in awarding attorney's fees against the trustee of the Jeanette S. Owings trust, the residuary trust, and the marital trust because the trustee was not a party to the guardianship proceedings in his capacity as trustee. Specifically, appellant argues that the fees could only be paid out of the fiduciary estate and, because the trusts at issue are not part of Ms. Owings's fiduciary estate, the trial court erred in making its award. Appellee asserts that we may not review the issue because appellant failed to raise it at the trial court level. Appellee is incorrect, however, because appellant raised the issue in his motion to alter or amend.

Maryland Rule 10–106(a) addresses the payment of fees of an attorney appointed by the court: "The fee of an appointed attorney shall be fixed by the court and shall be paid out of the fiduciary estate or as the court shall direct." Ms. Owings's fiduciary estate did not include the residuary trust, the marital trust, or the Jeanette S. Owings Trust because Ms.

**16**

Owings only had a life interest in the income generated by the instruments.

Appellee posits that his fees should have been awarded pursuant to the Settlement Agreement; the Agreement sets forth the following language regarding payment of appellee's fees:

2. The trustees of the Revocable Trust and the trustee of the Marital Trust shall pay, from the principal of those trusts, *charged in such part against the Marital Trust and such part against the Revocable Trust as Jim and Gail shall agree, but in the absence of any such agreement allocating half to the Marital Trust and half to the Revocable Trust)* the fees and expenses incurred by [named counsel]; the fees and expenses incurred for the services of William D. Foote, Jr., in connection with the guardianship and fiduciary proceedings and in the negotiation and execution of this agreement; and the fees and expenses for the services of Philip L. O'Donoghue and Furey, Doolan & Abell, L.L.P., in connection with Philip L. O'Donoghue's services as mediator in the negotiation, execution, and implementation of this agreement. The said charges for fees and services through *NOVEMBER* ——, 1999, are reflected on Exhibit D attached hereto and made a part hereof. The trustees will take appropriate action in liquidating assets from the trusts to pay those fees as soon as is reasonably possible. The fees and expenses will be paid on a pro-rated basis until satisfied. The determination of whether fees and expenses should be paid from the Marital Trust or the Revocable Trust shall be made by the trustees of those trusts, but trustees are jointly and severally liable (to the extent of trust assets) for payment of those fees and expenses. In all events, such fees and expenses shall be paid on or before *June 30, 2000.*

Exhibit D to the Agreement titled "Fees and Expenses Through May 9, 2000," consists of a list of attorneys, with fee amounts designated beside their names. Appellant argues that the Agreement only authorizes the payment of fees incurred prior to May 9, 2000. We do not find the Agreement

to be clear in this respect. The Agreement calls for payment of "the fees and expenses incurred . . . for the services of William D. Foote, Jr., in connection with the guardianship and fiduciary proceedings and in the negotiation and execution of this agreement," without placing any time limitation as to when the fees were incurred. Neither the reference in the text of the Agreement to Exhibit D, nor the Exhibit itself clarifies whether the parties intended that the fees and expenses would include all those relating to the designated matters, or just those incurred prior to a date certain. The designation of May 9, 2000 on Exhibit D could be interpreted to mean that May 9 was intended to be the cut-off date for such fees and expenses. On the other hand, it may just mean that the fees designated are those known as of May 9 and that others may accrue thereafter. The only way to resolve this ambiguity is for the parties to offer evidence extrinsic to the Agreement regarding their intent. We therefore remand the case for further proceedings to elicit the intent of the parties regarding whether the Agreement governs payment of counsel fees for service rendered after May 9, 2000. A factual determination that the parties did not intend for May 9, 2000 to serve as the cut-off date would compel a conclusion that appellee should be paid his fees from the Marital Trust and the Revocable Trust.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**