552 S.E.2d 420

**Shelby B. LEARY, Commissioner, State of West Virginia Division of Labor, Plaintiff Below, Appellant**

v.

**McDOWELL COUNTY NATIONAL BANK, Defendant Below, Appellee**

No. 29001.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2001.

Decided June 29, 2001.

Darrell V. McGraw, Jr., Esq., Attorney General, William S. Steele, Esq., Managing Deputy Attorney General, Perry D. McDaniel, Esq., Assistant Attorney General, Jeffrey G. Blaydes, Esq., Assistant Attorney General, Charleston, for Appellant.

Jeffrey V. Mehalic, Esq., Charleston, for Appellee.

MAYNARD, Justice.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on June 6, 2000. Pursuant to that order, the circuit court granted summary judgment in favor of the appellee and defendant below, the McDowell County National Bank (hereinafter "Bank"), in this action filed by the appellant and plaintiff below, Shelby B. Leary, Commissioner of the State of West Virginia Division of Labor, (hereinafter "Commissioner") to recover wages and fringe benefits owed to eleven coal miners who were employed by C & F Coal Company, Inc. (hereinafter "C & F").

In this appeal, the Commissioner contends that the circuit court erred by finding that the investigation of the unpaid wages and fringe benefits claims was "fatally flawed" and requests that this Court reverse the final order granting summary judgment to the Bank. The Commissioner also requests that this Court determine whether the wage bond issued by the Bank on behalf of C & F expired.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court with directions to enter an order granting summary judgment in favor of the Commissioner.

## I.

## FACTS

On June 12, 1990, the Bank, located in Welch, West Virginia, issued a wage bond pursuant to W.Va.Code § 21-5-14 [1] (1989) [2] on behalf of C & F. The bond was in the form of an irrevocable letter of credit for the sum of $35,880.00 and was made payable to the West Virginia Division of Labor with an expiration date of June 30, 1992. [3]

In the summer of 1992, C & F ceased operations because of financial problems. On June 29, 1992, the Commissioner notified the Bank that C & F had failed to pay Bobby Jones, a former employee, wages and benefits totaling $7,338.94. The Bank paid the claim from the letter of credit on July 28, 1992. Thereafter, the Commissioner investigated claims by eleven other employees of C & F and learned that wages and fringe benefits were owed to them in an amount exceeding the remainder of the letter of credit issued by the Bank. On March 12, 1993, the Commissioner notified the Bank that Thomas W. Gilbert, Darrell Carver, Charles E. Jones,

---

1. W.Va.Code § 21-5-14 (1989) provides, in pertinent part:

   (a) *Bond required.*—With the exception of those who have been doing business in this state actively and actually engaged in construction work, or the severance, production or transportation of minerals for at least five consecutive years next preceding the posting of the bond required by this section, every employer, person, firm or corporation engaged in or about to engage in construction work, or the severance, production or transportation (excluding railroads and water transporters) of minerals, shall, prior to engaging in any construction work, or the severance, production or transportation of minerals, furnish a bond on a form prescribed by the commissioner, payable to the state of West Virginia, with the condition that the person, firm or corporation pay the wages and fringe benefits of his or its employ-

   ees when due. The amount of the bond shall be equal to the total of the employer's gross payroll for four weeks at full capacity or production, plus fifteen percent of the said total of employer's gross payroll for four weeks at full capacity or production. The amount of the bond shall increase or decrease as the employer's payroll increases or decreases: Provided, That the amount of the bond shall not be decreased, except with the commissioner's approval and determination that there are not outstanding claims against the bond.

2. W.Va.Code § 21-5-14 was amended in 1991; however, the amendments were minor and do not affect the outcome of this case.

3. Initially, the letter of credit had an expiration date of June 30, 1991, but it was subsequently extended to June 30, 1992, pursuant to an automatic renewal provision.

Kenneth Bailey, Nolan B. Mangus, II, Blonnie K. Mitchem, Johnny P. Faw, Jerry L. Jones, Connie D. Mullins, Thomas M. Haynes, and Preston Dalton, former employees of C & F, also had claims for unpaid wages and fringe benefits. Pursuant to W.Va.Code § 21–5–14(e),[4] the Commissioner requested that the Bank remit the remainder of the letter of credit which totaled $28,541.06 within fourteen days. The Bank refused to pay the remainder of the bond claiming that the Commissioner had failed to properly investigate the claims for the unpaid wages and benefits and that the letter of credit had expired. Subsequently, the Commissioner filed suit against the Bank in the Circuit Court of Kanawha County on May 22, 1995, on behalf of the eleven former employees of C & F.

Thereafter, the Bank filed a motion to dismiss, and both parties filed motions for summary judgment. On June 2, 2000, the circuit court ruled that the Commissioner's investigation was "fatally flawed" and did not comply with the requirements of W.Va.Code § 21–5–14 and 42 C.S.R. § 5–16.5 (1990). Accordingly, the circuit court entered summary judgment in favor of the Bank in the final order dated June 6, 2000. This appeal followed.

## II.

## STANDARD OF REVIEW

We begin our analysis in this case by setting forth our standard of review. As discussed above, this is an appeal of an order granting summary judgment. In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that

"[a] circuit court's entry of summary judgment is reviewed *de novo*." In addition, the final order in this case indicates that the decision of the circuit court was based upon its interpretation of the relevant statute and legislative rule. In Syllabus Point 1 of *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." With these standards in mind, we now consider the parties' arguments.

## III.

## DISCUSSION

The Commissioner first contends that the circuit court erred by ruling that the investigation of the unpaid wage and fringe benefit claims performed by Charles Lockhart, a compliance officer for the Division of Labor, was "fatally flawed." Specifically, the circuit court found that Mr. Lockhart took the word of Kennie Childers, co-owner of C & F, that his former employees were owed the wages and benefits they claimed and failed to investigate the employer's payroll records in accordance with the applicable legislative rule. The circuit court concluded that by failing to examine the employer's payroll records and not submitting them to the Commissioner for review, the investigation performed by Mr. Lockhart was invalid, and therefore, the Commissioner's claim for the unpaid wages and benefits was unenforceable.

It is undisputed that Mr. Lockhart did not inspect the payroll records of C & F. How-

---

4. W.Va.Code § 21–5–14(e) provides:

*Action of commissioner.*—Any employee having wages and fringe benefits unpaid may inform the commissioner of the claim for unpaid wages and fringe benefits and request certification thereof. If the commissioner, upon notice to the employer and investigation, finds that such wages and fringe benefits or a portion thereof are unpaid, he shall make demand of such employer for the payment of such wages and fringe benefits. If payment for such wages and fringe benefits is not forthcoming within the time specified by the commissioner, not to exceed thirty days, the commissioner shall certify such claim or portion thereof, and forward the certification to the bonding company or the state treasurer, who shall provide payment to the affected employee within fourteen days of receipt of such certification. The bonding company, or any person, firm or corporation posting a bond, thereafter shall have the right to proceed against a defaulting employer for that part of the claim the employee paid. The procedure specified herein shall not be construed to preclude other actions by the commissioner or employee to seek enforcement of the provisions of this article by any civil proceedings for the payment of wages and fringe benefits or by criminal proceedings as may be deemed appropriate.

ever, it is also undisputed that the former employees have valid claims for unpaid wages and fringe benefits. In a deposition on September 18, 1998, Mr. Lockhart testified that he met with each miner as well as Mr. Childers during his investigation of these claims. He further testified that Mr. Childers admitted that he owed the sum set forth in each claim for unpaid wages and fringe benefits filed by his former employees. Thus, while Mr. Lockhart verified the unpaid wages and fringe benefits owed to the eleven employees, he did not inspect C & F's payroll records.

Although W.Va.Code § 21–5–14(e) is silent as to the nature of the investigation required when an employee files a claim for unpaid wages and fringe benefits, 42 C.S.R. § 5–16.5 provides, in pertinent part:

> When a claim for wages against an employer who has posted a bond is made, the Commissioner will cause an investigation of the employer's payroll records and have them submitted for his or her review and determination of wages. He or she will then have certification of the wages prepared and present same to the bonding company or the State Treasurer for payment of said wages.

The circuit court has interpreted this legislative rule as imposing a mandatory duty upon the Commissioner to review the employer's payroll records. After examining the rule and considering it in the context of the purpose of the Wage Payment and Collection Act, W.Va.Code §§ 21–5–1 to –18, we find the circuit court's interpretation of 42 C.S.R. § 5–16.5 to be erroneous.

■ This Court has often noted that the paramount goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *In re Greg H.,* 208 W.Va. 756, 760, 542 S.E.2d 919, 923 (2000) *(citing State ex rel. Goff v. Merrifield,* 191 W.Va. 473, 446 S.E.2d 695 (1994); *Hechler v. McCuskey,* 179 W.Va. 129, 365 S.E.2d 793 (1987); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983)). Accordingly, we have stated that "[i]n interpreting any statute, our principles of statutory con-

struction require us to give effect to the spirit, purpose, and intent of the Legislature." *State v. King,* 205 W.Va. 422, 427, 518 S.E.2d 663, 668 (1999) *(citing Wooddell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976)). Moreover, this Court has held that " ' "Rules and Regulations of . . . [an agency] must faithfully reflect the intention of the legislature; when there is clear and unambiguous language in a statute, that language must be given the same clear and unambiguous force and effect in the . . . [agency's] Rules and Regulations that it has in the statute." Syl. pt. 4, *Ranger Fuel Corp. v. West Virginia Human Rights Commission,* 180 W.Va. 260, 376 S.E.2d 154 (1988).' Syl. pt. 2, in part, *Chico Dairy Company v. Human Rights Commission,* 181 W.Va. 238, 382 S.E.2d 75 (1989)." Syllabus Point 5, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

This Court has previously recognized that "[t]he West Virginia Wage Payment and Collection Act is remedial legislation designed to protect working people and assist them in the collection of compensation wrongfully withheld." *Mullins v. Venable,* 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982). In this regard, W.Va.Code § 21–5–14 provides a mechanism for employees to obtain unpaid wages and benefits. When such a claim is made, the statute directs the Commissioner to conduct an investigation to certify that the claimed wages and benefits have not been paid. W.Va.Code § 21–5–14(e). Once the unpaid wages and fringe benefits are confirmed, the Commissioner must demand that the employer pay said wages and benefits. *Id.* If payment is not made, the Commissioner then forwards the certification of the wages and benefits to the bonding company for payment. *Id.*

■ As noted above, W.Va.Code § 21–5–14 does not address the nature of the Commissioner's investigation.[5] While 42 C.S.R. § 5–16.5 instructs the Commissioner to investigate the employer's records, the regulation does not contain any mandatory language such as the word "shall" requiring the Commissioner to inspect the payroll rec-

5. *See note 4, supra.*

ords. *See* Syllabus Point 3, in part, *State v. Richards*, 206 W.Va. 573, 526 S.E.2d 539 (1999) (" ' "The word 'shall,' . . . should be afforded a mandatory connotation." Point 2 Syllabus, *Terry v. Sencindiver*, 153 W.Va. 651[, 171 S.E.2d 480 (1969) ].' Syllabus point 3, *Bounds v. State Workmen's Compensation Comm'r*, 153 W.Va. 670, 172 S.E.2d 379 (1970)"). Obviously, the Commissioner must verify the unpaid wage and fringe benefit claims. However, given the legislative intent to insure that working people receive wages and fringe benefits wrongfully withheld, the lack of any instruction in the statute regarding the nature of the Commissioner's investigation, and the absence of any mandatory language in the corresponding legislative rule, we hold that the Commissioner is not required to inspect the payroll records of an employer while investigating a claim for unpaid wages and fringe benefits pursuant to W.Va.Code § 21–5–14, if he or she is otherwise able to verify that the claimed wages and fringe benefits have not been paid. We further hold that an admission from an employer that a specific sum of wages and fringe benefits is owed to an employee and has not been paid is sufficient evidence upon which the Commissioner may make a demand for the payment of such wages and fringe benefits pursuant to W.Va.Code § 21–5–14.

■ Based upon the record, we find that the Commissioner adequately investigated the claims of the eleven coal miners in this case.[6] Thus, we further find that the circuit court erred by concluding that the Commissioner's investigation of the unpaid wages and fringe benefits was "fatally flawed." Accordingly, the final order of the circuit court granting summary judgment in favor of the Bank is reversed.

Having found that the circuit court erred by granting summary judgment in favor of the Bank, we now consider the issue of whether the wage bond expired before the Commissioner made the claim for unpaid wages and benefits on behalf of the eleven coal miners. At the outset, we acknowledge

that this issue was not addressed by the circuit court. It is obvious that the circuit court felt that the issue of whether the wage bond had expired was rendered moot by its determination that the Commissioner had not adequately investigated the unpaid wage claims.

Generally, " '[t]his Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.' Syllabus Point 4, *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.*, [158] W.Va. [935], 216 S.E.2d 234 (1975)." Syllabus Point 1, *Buffalo Mining Co. v. Martin*, 165 W.Va. 10, 267 S.E.2d 721 (1980). However, on occasion, we have found it necessary to address issues not technically before us. In those instances, this Court has determined that sufficient collateral consequences will result from determination of the question presented so as to justify relief; that the issue is of such great public interest that it must be addressed to provide future guidance to the bar and the public; or that the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting and determinate nature. *See J.M. v. Webster County Bd. of Educ.*, 207 W.Va. 496, 534 S.E.2d 50 (2000); *McGraw v. Caperton*, 191 W.Va. 528, 446 S.E.2d 921 (1994); *Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989). In this case, the issue presented is solely a question of law and can be decided based upon the record before us. Given this fact, we find that the interests of judicial economy and finality require us to render a decision on this issue instead of remanding the case to the circuit court and waiting for it to come before us on a second appeal.

■ It is undisputed that an irrevocable letter of credit can serve as a wage bond pursuant to W.Va.Code § 21–5–14(c). This statute provides that an employer's bond for wages may include "with the approval of the commissioner, surety bonding, collateral bonding (including cash and securities), letters of credit, establishment of an escrow

---

**6.** Because we find that the Commissioner fulfilled her statutory duty, we need not consider whether an inadequate investigation by the Com-

missioner would defeat an otherwise valid claim for unpaid wages and fringe benefits.

account or a combination of these methods." W.Va.Code § 21–5–14(c). Furthermore, the statute states that "the commissioner shall accept an irrevocable letter of credit in lieu of any other bonding requirement." *Id.*

Termination of the wage bond is addressed by W.Va.Code § 21–5–14(g) which provides:

The bond may be terminated, with the approval of the commissioner, after an employer submits a statement, under oath or affirmation lawfully administered, to the commissioner that the following has occurred: The employer has ceased doing business and all wages and fringe benefits have been paid, or the employer has been doing business in this state for at least five consecutive years and has paid all wages and fringe benefits. The approval of the commissioner will be granted only after the commissioner has determined that the wages and fringe benefits of all employees have been paid. The bond may also be terminated upon a determination by the commissioner that an employer is of sufficient financial responsibility to pay wages and fringe benefits.

Based on this statute, the Commissioner contends that the letter of credit in this case could only be terminated with approval. The Commissioner further asserts that since the termination of C & F's wage bond was never approved, the Bank could not deny payment of the unpaid wages and fringe benefits.

■ In response, the Bank argues that pursuant to the Uniform Commercial Code (hereinafter "UCC"), the letter of credit which it issued was irrevocable only during its stated duration, not for an indefinite period of time, and thus expired on June 30, 1992. In making this argument, the Bank relies upon W.Va.Code § 46–5–106 (1996), the UCC provision which addresses the issu-

ance, amendment, cancellation, and duration of letters of credit.[7] In other words, the Bank asserts that the UCC provisions must be considered and applied along with W.Va. Code § 21–5–14.

This Court has held that "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." Syllabus Point 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975). However,

to say that because several statutes relate to the same subject, they must always be read *in pari materia* is an oversimplification of the rule. First, it is apparent that what is meant by statutes relating to the same subject matter is an inquiry that is answered by how broadly one defines the phrase "same subject matter." Second, the application of the rule of *in pari materia* may vary depending on how integral the statutes are to each other. The rule is most applicable to those statutes relating to the same subject matter which are passed at the same time or refer to each other or amend each other. A diminished applicability may be found where statutes are self-contained and have been enacted at different periods of time. *See generally* 2A Sutherland Statutory Construction Sec. 51.01 (4th ed.1973). Finally, "a related statute cannot be utilized to create doubt in an otherwise clear statute."

*Berkeley County Public Service Sewer Dist. v. West Virginia Public Service Comm'n,* 204 W.Va. 279, 287, 512 S.E.2d 201, 209 (1998) (citations omitted).

---

7. W.Va.Code § 46–5–106 (1996) provides:

(a) A letter of credit is issued and becomes enforceable according to its terms against the issuer when the issuer sends or otherwise transmits to the person requested to advise or to the beneficiary. A letter of credit is revocable only if it so provides.

(b) After a letter of credit is issued, rights and obligations of a beneficiary, applicant, confirmer, and issuer are not affected by an amendment or cancellation to which that person has not consented except to the extent the

letter of credit provides that it is revocable or that the issuer may amend or cancel the letter of credit without that consent.

(c) If there is no stated expiration date or other provision that determines its duration, a letter of credit expires one year after its stated date of issuance or, if none is stated, after the date on which it is issued.

(d) A letter of credit that states that it is perpetual expires five years after its stated date of issuance, or if none is stated, after the date on which it is issued.

Upon examination of the statutes cited by the parties, we find that the Bank's reliance upon W.Va.Code § 46–5–106, as cited above, is misplaced. As noted above, the letter of credit at issue in this case was initially issued in 1990. W.Va.Code § 46–5–106 was amended and reenacted in 1996 along with all of the other provisions of Article 5 of Chapter 46 of the W.Va.Code. In reenacting Article 5, the legislature provided that:

This article applies to a letter of credit that is issued on or after the effective date of the reenactment of this article. This article does not apply to a transaction, event, obligation, or duty arising out of or associated with a letter of credit that was issued before the first day of July, one thousand nine hundred ninety-six.

W.Va.Code § 46–5–119 (1996). Thus, W.Va. Code § 46–5–106 as cited by the Bank clearly does not apply to this case.

■ Although the current version of W.Va.Code § 46–5–106 is not applicable, we believe it is necessary to consider its prior version because the statute does relate to the "same subject matter." In June 1990, when the letter of credit was issued by the Bank in this case, the UCC provided for both a revocable and irrevocable letter of credit. W.Va. Code § 46–5–103(1)(a) (1963). With respect to an irrevocable letter of credit, W.Va.Code § 46–5–106(2) (1963) stated that:

Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with the consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent.

At first glance, this statute appears to be consistent with W.Va.Code 21–5–14(g) which provides that a wage bond may only be terminated with the approval of the Commissioner, the beneficiary of the letter of credit

in this case. However, it could be argued that the expiration date set forth in the letter of credit constituted an agreement by the Commissioner that the bond would be revoked on that date. We decline to adopt that position for two reasons. First, W.Va.Code § 46–5–102(3) (1963) explicitly provides that:

[t]his article deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to the effective date of this chapter [July 1, 1964] or may hereafter develop. The fact that this article states a rule does not by itself require, imply, or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this article.

Secondly, such a result would be contrary to the Wage Payment and Collection Act which was designed to protect working people and assist them in the collection of unpaid wages and benefits. Thus, we hold that to the extent that W.Va.Code § 46–5–106 (1963) conflicts with W.Va.Code § 21–5–14, the provisions of the latter are controlling with regard to the termination of an irrevocable letter of credit serving as a wage bond. In other words, an irrevocable letter of credit serving as a wage bond pursuant to W.Va. Code § 21–5–14 can only be terminated with the approval of the Commissioner of the Division of Labor.[8]

In this case, the record shows that C & F never submitted any statement under oath saying that it had ceased doing business and that all wages and benefits had been paid. Clearly, the letter of credit was never terminated with the approval of the Commissioner. Therefore, the Bank had no basis to deny the Commissioner's claim for the unpaid wages and fringe benefits on behalf of the eleven coal miners.[9]

---

8. Although the Commissioner must consent to the termination of the wage bond, the financial institution or bonding company will not be committed and obligated to the letter of credit for an indefinite period of time as asserted by the Bank in this case. Pursuant to W.Va.Code § 21–5–14, an employer is not required to post a wage bond after five consecutive years of doing business in this State.

9. We note that our decision today is limited in that it was not necessary for us to address W.Va. Code § 46–5–106 (1996). Moreover, it was not necessary for us to consider whether the Bank's liability for unpaid compensation accrued at the time the C & F failed to pay the wages and fringe benefits to the eleven coal miners.

## IV.

## CONCLUSION

Having found that the circuit court erred by granting summary judgment in favor of the Bank based on the Commissioner's failure to investigate C & F's payroll records, and having further found that the wage bond had not been terminated at the time the Commissioner made the claim for the unpaid wages and benefits, we find that the Commissioner is entitled to summary judgment as a matter of law. This Court has long since held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). *See also*

W.Va. R. Civ. P. 56. Therefore, the final order of the Circuit Court of Kanawha County entered on June 6, 2000, is reversed, and this case is remanded to the circuit court with directions to enter an order granting summary judgment in favor of the Commissioner. Accordingly, the irrevocable letter of credit is valid and currently enforceable as a wage payment bond from which these eleven coal miners may immediately collect their unpaid wages and fringe benefits.

Reversed and Remanded with directions.