624 S.E.2d 729

**SUBCARRIER COMMUNICATIONS, INC. A New Jersey Corporation, Plaintiff Below, Appellee,**

v.

**Ronald E. NIELD, John B. Lusk, Patrick Lee Nield, and LL & N Investments, LLC, A West Virginia Limited Liability Company, Defendants and Third–Party Plaintiffs Below, Appellants,**

v.

**Neil A. REED and The County Commission of Preston County, A West Virginia Statutory Commission, Third–Party Defendants Below, Appellees.**

No. 32752.

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 15, 2005.

Filed: Dec. 1, 2005.

Robert S. Kiss, Camden P. Siegrist, Heather G. Harlan, .Bowles Rice McDavid Graff & Love LLP, Charleston, for the Appellant.

William J. Leon, William J. Leon, L.C., Morgantown, for Appellee Subcarrier Communications, Inc.

Justice DAVIS delivered the Opinion of the Court.

DAVIS, Justice.

In this action to set aside a tax deed, the holders of the tax deed appeal summary judgment in favor of the landowner. In granting summary judgment and setting aside the tax deed as void, the circuit court found that, based upon the undisputed facts, there was no question that after the purchase of the tax lien, the tax lienholder failed to exercise due diligence in obtaining the landowners correct address in order to provide notice to the landowner of its right to redeem the property. After reviewing the parties' arguments, the record submitted on appeal and the relevant authority, we find that, because the tax lienholder held the position of sheriff, he is prohibited from purchasing the tax lien or receiving the tax deed. Accordingly, we affirm the circuit court's order granting summary judgment and setting aside the tax deed as void.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In November 1996, Subcarrier Communications, Inc., Plaintiff below and Appellee (hereinafter referred to as "Subcarrier"), purchased a 9.23–acre tract of real estate from Skyline Communications, Ltd.[1] The deed commemorating the sale was duly recorded in the office of the Preston County Clerk and correctly identified Subcarrier's corporate address as 101 Eisenhower Parkway, Roseland, New Jersey.

In September of 1997, Subcarrier relocated its office to 139 White Oak Lane, Old Bridge, New Jersey. By correspondence dated November 25, 1997, Subcarrier notified the Preston County Clerk of its change in address and current phone number. Nevertheless, in May 1998, when the 1997 property tax for the realty had not been paid,[2] the

---

1. A telecommunications tower and a building housing equipment for the operation of the tower were located on the property.

2. In July 1997, the Preston County Clerk had mailed the 1997 real estate tax ticket for the subject property. Because the deed transferring the realty was recorded after July 1996, the tax

Sheriff of Preston County mailed a notice of delinquency to Subcarrier at its former, Roseland, New Jersey, address. A postal forwarding order was in effect at that time, so Subcarrier received the notice at its new address. Subcarrier responded to the notice by tendering a check in the proper amount and enclosing a letter with the check again advising the sheriff of Subcarrier's new address. Additionally, the check tendered in payment of the delinquent taxes bore Subcarrier's new address.

Nevertheless, when property tax statements were issued for the 1998 tax year, the sheriff once again mailed Subcarrier's statement to its old Roseland, New Jersey, address. Thereafter, in September 1998, the sheriff mailed a notice of delinquency due to Subcarrier's failure to pay the 1998 property tax. As before, the sheriff mailed the notice to Subcarrier's old Roseland, New Jersey, address. By this time the postal forwarding order had expired and the statement was returned to the sheriff's office with a stamp stating "[u]ndeliverable, [f]orwarding order expired."

On November 15, 1999, a tax lien sale was conducted by the Preston County Sheriff. Mr. Patrick Nield, Sheriff of Mineral County, West Virginia, a Defendant below and one of the Appellants (hereinafter referred to as "Sheriff Nield"), purchased the tax lien for the property for the amount of $436.38.[3] Thereafter, in late 2000, Sheriff Nield engaged attorney Neil Reed, a third-party defendant below, to research the title to the property and to otherwise assist Sheriff Nield in obtaining a tax deed to the property. One of the requirements for obtaining a tax deed is to provide notice of the right to redeem pursuant to W. Va.Code §§ 11A–3–19 (1998) (Repl.Vol.2005), 11A–3–21 (1998) (Repl.Vol.2005), and 11A–3–22 (1995) (Repl. Vol.2005). To facilitate proper notice to Sub-

carrier, Sheriff Nield contacted the West Virginia Secretary of State's office to obtain Subcarrier's current mailing address. The only address on record for Subcarrier was the old, Roseland, New Jersey, address. Therefore, the county clerk mailed the notice to Subcarrier's old, Roseland, New Jersey, address.[4] As expected, the notice of the right to redeem sent to Subcarrier was returned stamped "[u]ndeliverable, [f]orwarding order expired." Thereafter, in January 2001, the notice of right to redeem was published in the Preston County News and the Preston County Journal, pursuant to W. Va. Code § 11A–3–22, the statute that provides, *inter alia*, for serving notice on an out-of-state landowner whose address "cannot be discovered by due diligence."

On or about April 12, 2001, Sheriff Nield assigned his tax lien to himself, his son Ronald Nield, and John B. Lusk, defendants below and appellants. On the same date, the county clerk issued a tax deed for the subject property naming Sheriff Nield, Ronald Nield and John Lusk as the grantees. Also on that day, Sheriff Nield went to the property and observed a sign attached to a fence surrounding the telecommunications tower which displayed Subcarrier's name, current address and phone number. The circuit court found that it was undisputed that this sign had been present on the property since at least August 1999. Sheriff Nield then called Subcarrier and informed it that he possessed a tax deed to the property.

In July 2001, Sheriff Nield, Ronald Nield and John Lusk conveyed the property to LN & N Investments, LLC. Sheriff Nield, Ronald Nield and John Lusk are the sole principals of LN & N (hereinafter collectively referred to as "the defendants").

Then, on September 3, 2002, Subcarrier filed suit to set aside the tax deed.[5] The

---

ticket was sent to the former owner of the realty, Skyline Communications, Ltd.

**3.** The circuit court noted in its order that in his deposition of June 21, 2004, Patrick Nield "estimated the value of the subject property at between $100,000.00 and $300,000.00 and probably at the $150,000.00 level."

**4.** Notices were also sent to Skyline Communications, Ltd., who had sold the property to Subcar-

rier, and to the trustees under a deed of trust on the property. The trustees apparently received the notices, but did not discuss the same with Subcarrier.

**5.** Subcarrier initially named as defendants Sheriff Nield, Ronald Nield and John Lusk. LN & N, LLC, was later added as a defendant by amended complaint.

defendants filed an answer and counterclaim seeking recovery of damages equal to the amount of income Subcarrier had received from contracts involving the use of the telecommunications tower.[6]

Subcarrier filed a motion for summary judgment on June 26, 2003, claiming that there was no question of fact that the defendants had failed to exercise due diligence in obtaining Subcarrier's correct address for providing notice of the right to redeem, and further asserting that the tax deed was voidable as a matter of law pursuant to W. Va.Code § 11A–3–6(a) (1994) (Repl.Vol.2005), which prohibits sheriffs from purchasing tax liens. The circuit court denied the motion by order entered October 15, 2003, finding there was a genuine question of material fact on the issue of whether the defendants had exercised due diligence. The circuit court additionally found that the issue of whether Sheriff Nield was prohibited from purchasing the tax lien was a question of first impression in West Virginia, and held "in abeyance its ruling regarding whether the tax lien purchased by Defendant Patrick Nield, and the tax deed issued to Defendants pursuant thereto, are voidable pursuant to West Virginia Code § 11A–3–6(a)."

The case was further developed over the next year and Subcarrier renewed its motion for summary judgment on July 26, 2004. By order entered October 25, 2004, the Circuit Court of Preston County granted summary judgment to Subcarrier based upon its finding that there was no question that defendants had failed to make a reasonable inquiry that could and would have revealed the correct mailing address for the notice requirements set forth in W. Va.Code § 11A–3–22.[7] It is from this order that the defendants now appeal.

## II.

## STANDARD OF REVIEW

■ This case is before us on appeal from an order granting summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). When undertaking our plenary review, we apply the same standard for granting summary judgment as would be applied by a circuit court. Specifically,

" '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter.* We further observe that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter.*

■ Finally, because we herein address the proper application of a statute, we note that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). With these various principals in mind, we proceed to our discussion of the issues raised in this appeal.

## III.

## DISCUSSION

In this case, notice to Subcarrier of its right to redeem the property at issue was provided by publication after the mailed notices were returned as undeliverable. In granting summary judgment in favor of Subcarrier, the circuit court noted that under W. Va.Code § 11A–3–22, a nonresident may be served via notice by publication only "as a substitute for actual notice where a current, valid address for the nonresident 'cannot be

---

6. The defendants also filed a third-party complaint against attorney Neil Reed with respect to his services in obtaining the tax deed. No issues regarding this third-party suit are presently before this Court.

7. The circuit court did not address the issue it had previously held in abeyance, i.e., whether the tax deed was voidable pursuant to W. Va.Code § 11A–3–6(a).

discovered by due diligence.' " (Citation omitted). The circuit court concluded that "a reasonable inquiry by the individual Defendants could and would have revealed the correct mailing address of the Plaintiff at which Plaintiff would have received the notice of its right to redeem the subject property as is required by West Virginia law."

On appeal, the defendants argue that the sole issue before this Court is whether the circuit court erred in granting summary judgment in favor of Subcarrier based upon its determination that the defendants failed to make a reasonable inquiry to discover Subcarrier's correct mailing address for the notice requirements set forth in W. Va.Code § 11A–3–22. The defendants assert that they satisfied the § 11A–3–22 requirement for "due diligence."

 We need not reach the issue raised by the defendants, however, as we find that summary judgment was proper on grounds other than those asserted by the circuit court.

> In *Williams v. Precision Coil, Inc.*, [194 W.Va. 52, 459 S.E.2d 329 (1995)], we acknowledged that a grant of summary judgment may be sustained on any basis supported by the record. Thus, it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court.

*Gentry v. Mangum*, 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995) (footnote omitted).

 The dispositive issue in this case is the question of whether Sheriff Nield is prohibited by W. Va.Code § 11A–3–6(a) from purchasing a tax lien or receiving a tax deed.[8] To answer this question, we look to the relevant statute, while mindful that, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995).

 W. Va.Code § 11A–3–6(a) states:

> *No sheriff,* clerk of the county commission or circuit court, assessor, nor deputy of any of them, *shall directly or indirectly become the purchaser,* or be interested in the purchase, *of any tax lien on any real estate at the tax sale or receive any tax deed conveying such real estate.* Any such officer so purchasing shall forfeit one thousand dollars for each offense. The sale of any tax lien on any real estate, or the conveyance of such real estate by tax deed, to one of the officers named in this section shall be voidable, at the instance of any person having the right to redeem, until such real estate reaches the hands of a bona fide purchaser.

(Emphasis added). We find nothing ambiguous about this statute's prohibition against sheriffs purchasing tax liens or receiving tax deeds. Therefore, we may not construe its language. "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). Stated otherwise, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). *See also* Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syllabus Point 2, *State v. Epperly,*

---

**8.** Subcarrier has raised this issue in its cross assignment of error challenging the circuit court's denial of its first motion for summary judgment. Due to the manner in which we resolve this case, it not necessary to address Subcarrier's cross-assignment of error involving the denial of that motion.

135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Under the plain language of W. Va.Code § 11A–3–6(a), "[n]o sheriff," may purchase a tax lien or receive a tax deed.

The defendants argue, however, that when W. Va.Code § 11A–3–6(a) is read in the context of the other sections of the West Virginia Code that make up Article 3 of Chapter 11A, it becomes clear that the Legislature intended to prohibit from purchasing a tax lien or receiving a tax deed only the sheriff of the county in which the tax sale is being conducted. The defendants are correct that a statute must be read in the context of other sections of the code pertaining to the same subject matter. "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly."). However, " 'a related statute cannot be utilized to create doubt in an otherwise clear statute.' " *Berkeley County Pub. Serv. Sewer Dist. v. West Virginia Pub. Serv. Comm'n*, 204 W.Va. 279, 287, 512 S.E.2d 201, 209 (1998) (citations omitted).[9] While we agree that in this instance it is proper to consider W. Va.Code § 11A–3–6(a) in light of its surrounding statutes, we disagree with the defendant's position that such a reading leads to the conclusion that "[n]o sheriff," as used in W. Va.Code § 11A–3–6(a), is actually a reference to only the sheriff of a particular county.

A thorough examination of Article 3 of Chapter 11A of the West Virginia Code plainly reveals that the Legislature refers to "sheriff" in both specific and general forms. When a provision applies to a specific sheriff, e.g., the sheriff conducting a tax sale, the Legislature indicates as much by utilizing the phrase "the sheriff." *See, e.g.,* W. Va.Code § 11A–3–2(a)(2000) (Repl.Vol.2005) ("On or before the tenth day of September of each year, *the sheriff* shall prepare a second list of delinquent lands, which shall include all real estate *in his county* remaining delinquent as of the first day of September, together with a notice of sale,....") (emphasis added); W. Va.Code § 11A–3–2(b) ("no less than thirty days prior to the sale *the sheriff* shall send a notice of the delinquency ....") (emphasis added); W. Va.Code § 11A–3–3(a) (1995) (Repl.Vol.2005) ("unless he shall have filed a statement declaring such interest with *the sheriff*") (emphasis added); W. Va.Code § 11A–3–5(a) (2000) (Repl.Vol.2005) ("The tax lien on each unredeemed tract or lot, or each unredeemed part thereof or undivided interest therein shall be sold by *the sheriff*....") (emphasis added); W. Va.Code § 11A–3–7(a) (1994) (Repl.Vol.2005) ("Whenever it shall appear to *the sheriff* that any real estate included in the list has been previously conveyed by deed and no tax thereon is currently delinquent, ....") (emphasis added); W. Va.Code § 11A–3–20 (2005)

---

**9.** We have also cautioned that,

"to say that because several statutes relate to the same subject, they must always be read *in pari materia* is an oversimplification of the rule. First, it is apparent that what is meant by statutes relating to the same subject matter is an inquiry that is answered by how broadly one defines the phrase 'same subject matter.' Second, the application of the rule of *in pari materia* may vary depending on how integral the statutes are to each other. The rule is most applicable to those statutes relating to the same subject matter which are passed at the same time or refer to each other or amend each other. A diminished applicability may be found where statutes are self-contained and have been enacted at different periods of time. *See generally* 2A Sutherland Statutory Construction § 51.01 (4th ed.1973)...."

*Leary v. McDowell County Nat'l Bank,* 210 W.Va. 44, 50, 552 S.E.2d 420, 426 (2001) (quoting *Berkeley County Pub. Serv. Sewer Dist. v. West Virginia Pub. Serv. Comm'n,* 204 W.Va. 279, 287, 512 S.E.2d 201, 209).

(Repl.Vol.2005) ("Upon receipt of the abstract or certificate, *the sheriff* shall cause the moneys so paid to be refunded. Upon refund, *the sheriff* shall inform the assessor of the erroneous assessment for the purpose of having the assessor correct the error.") (emphasis added); W. Va.Code § 11A–3–24(b) (1998) (Repl.Vol.2005) ("following the sheriff's sale as provided in section twenty-three [§ 11A–3–23] of this article, *the sheriff* shall deposit the money received in the sale of tax lien surplus fund provided by section ten of this article.") (emphasis added); W. Va.Code § 11A–3–32(a) (1994) (Repl.Vol. 2005) ("*The sheriff* shall keep in a separate fund the proceeds of all redemptions and sales paid to *him* under the provisions of this chapter ....") (emphasis added).

However, when a reference is to sheriffs generally, terms such as "a sheriff," "each sheriff," "any sheriff," or, of significance to the instant case, "no sheriff," are used. *See e.g.,* W. Va.Code § 11A–3–5(b) ("*Each sheriff* is immune from liability if a loss or claim results from the sale of a tax lien conducted pursuant to the provisions of this article ....") (emphasis added); W. Va.Code § 11A–3–11(b) (1994) (Repl.Vol.2005) ("*Any sheriff* who fails to prepare and return the list of sales, suspensions, redemptions and certifications within the time required by this section shall forfeit not less than fifty nor more than five hundred dollars, ....") (emphasis added); W. Va.Code § 11A–3–18(a) (2000) (Repl.Vol.2005) ("No lien upon real property evidenced by a tax certificate of sale issued by *a sheriff* on account of any delinquent property taxes may remain a lien thereon for a period longer than eighteen months after the original issuance thereof.") (emphasis added).

Thus, Article 3 itself demonstrates that if the Legislature had intended W. Va. Code § 11A–3–6(a) to apply so as to prohibit only the sheriff conducing the sale from buying a tax lien, then it would have made a specific reference to the sheriff. Instead, the Legislature proclaimed that "[no] sheriff" shall purchase a lien or receive a tax deed. We are bound to presume that by plainly stating "[n]o sheriff," the Legislature meant no sheriff. " '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)).

While a statute that applies to prohibit only the sheriff of the county in which the tax sale is being conducted from purchasing a tax lien or receiving a tax deed might be perfectly reasonable, such a limitation is simply not included in W. Va.Code § 11A–3–6(a), and this Court is not authorized to place it there.

" '[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.'* Banker v. Banker,* 196 W.Va. 535, 546–47, 474 S.E.2d 465, 476–77 (1996) (*citing Bullman v. D & R Lumber Company,* 195 W.Va. 129, 464 S.E.2d 771 (1995); *Donley v. Bracken,* 192 W.Va. 383, 452 S.E.2d 699 (1994)). ( [E]mphasis added). *See State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994). Moreover, '[a] statute, or an administrative rule, may not, under the guise of "interpretation," be modified, revised, amended or rewritten.' Syl. pt. 1, *Consumer Advocate Division v. Public Service Commission,* 182 W.Va. 152, 386 S.E.2d 650 (1989). *See Sowa v. Huffman,* 191 W.Va. 105, 111, 443 S.E.2d 262, 268 (1994)." *Williamson v. Greene,* 200 W.Va. 421, 426–27, 490 S.E.2d 23, 28–29 (1997).
*Longwell v. Board of Educ. of County of Marshall,* 213 W.Va. 486, 491, 583 S.E.2d 109, 114 (2003).[10]

---

10. Likewise, " '[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 735, 474 S.E.2d 906, 915 (1996) (quoting *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991)). Indeed, " '[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]' " *State v. Richards,* 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999) (quoting *State v. General*

■ Based upon the foregoing, we hold that W. Va.Code § 11A-3-6(a) (1994) (Repl. Vol.2005) is plain in stating that "No sheriff, ... shall directly or indirectly become the purchaser, or be interested in the purchase, of any tax lien on any real estate at the tax sale or receive any tax deed conveying such real estate." There is nothing in this statute to limit its prohibition to only the sheriff conducting the tax sale.

■ It is not disputed that Sheriff Nield is the sheriff of Mineral County, thus he is prohibited from being a purchaser of a tax lien or receiving a tax deed conveying such real estate. The defendants further assert, however, that because the property has been sold to LN & N Investments, LLC, the deed is no longer voidable. In support of this argument, the defendants direct our attention to the last provision of W. Va.Code § 11A-3-6(a), which states:

> The sale of any tax lien on any real estate, or the conveyance of such real estate by tax deed, to one of the officers named in this section shall be voidable, at the instance of any person having the right to redeem, *until such real estate reaches the hands of a bona fide purchaser.*

(Emphasis added). The defendants contend that LN & N Investments, LLC, is a bona fide purchaser. We disagree. The statute does not define the term *bona fide purchaser,* we therefore afford the term its common, ordinary meaning. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982).

This Court long ago held that "[a] *bona fide* purchaser is one who actually purchases in good faith." Syl. pt. 1, *Kyger v. Depue,* 6 W.Va. 288 (1873). We have also described a bona fide purchaser of land as " 'one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry.' " *Stickley v. Thorn,* 87 W.Va. 673, 678,

*Daniel Morgan Post No. 548,* 144 W.Va. 137, 145,

106 S.E. 240, 242 (1921) (quoting *Carpenter Paper Co. v. Wilcox,* 50 Neb. 659, 70 N.W. 228 (1897)). *See also Simpson v. Edmiston,* 23 W.Va. 675, 680 (1884) ("[A] *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it."); Black's Law Dictionary 1249 (7th ed.1999) (defining a bona fide purchaser as "[o]ne who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.").

■ In the instant case, we are presented with the unusual circumstance of a person who, by virtue of his position as sheriff, is prohibited by law from purchasing tax liens or receiving tax deeds. The question we must answer is whether a corporation may hold such a deed as a bona fide purchaser when the sheriff is a principal of the corporation. Given the foregoing definitions of a bona fide purchaser, we find that such a corporation may not enjoy bona fide purchaser status. It would defy logic and justice to allow a sheriff to own, as the principal of a corporation, that which he is prohibited by law from owning. Moreover, this Court has recognized that one who purchases real estate from a tax-purchaser can never be a bona fide purchaser. In *Simpson v. Edmiston,* the Court explained

> A tax sale is the culmination of proceedings which are matters of record; and it is a reasonable presumption of law, where one acquires rights which depend upon matters of record, he first makes search of the record in order to ascertain whether anything shown thereby would diminish the value of such rights, or tend in any contingency to defeat them. A tax-purchaser, consequently, cannot be in any strict technical sense a *bona fide* purchaser, as that term is understood in the law. *And for the same reason his vendee cannot be such purchaser;* because a *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it; but *the tax-purchaser and his vendees are always*

107 S.E.2d 353, 358 (1959)).

*deemed to have such notice when the record shows defects.* They cannot shut their eyes to what has been recorded for the information of all concerned, and relying implicitly on the action of the officers, assume what they have done is legal because they did it.

23 W.Va. 675, 680 (emphasis added). Accordingly, we now hold that where a sheriff is among the principals of a corporation, the corporation cannot, for purposes of W. Va. Code § 11A–3–6(a) (1994) (Repl.Vol.2005), be deemed a bona fide purchaser of real estate that has been acquired by virtue of a tax deed.

The record is clear that Sheriff Nield is one of three principals of LN & N Investments, LLC. Therefore, LN & N Investments, who purchased the property from the defendants, cannot be deemed a bona fide purchaser of the real estate at issue herein. In the absence of a bona fide purchaser, the deed is "voidable at the instance of" Subcarrier. W. Va.Code § 11A–3–6(a). Accordingly, the circuit court did not err in granting summary judgment to Subcarrier, and setting aside the tax deed as void.

### IV.

### CONCLUSION

For the reasons set out in the body of this opinion, the order of the Circuit Court of Preston County, entered on October 25, 2004, is affirmed.

Affirmed.